Michael Machat, Esq. (SBN# 109475)
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
Telephone:  (310) 860-1833
Telefax:  (310) 860-1837
Email:  info@machatlaw.com

Attorneys for Plaintiff
World Axe Throwing League, Inc. and
Lincoln Chicago Holdings, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WORLD AXE THROWING LEAGUE, INC, and LINCOLN CHICAGO HOLDINGS, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>COLD STEEL, INC., and GSM LLC d/b/a GSM OUTDOORS<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION; FALSE ADVERTISING; AND UNFAIR BUSINESS PRACTICES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs World Axe Throwing League, Inc. and Lincoln Chicago Holdings, Inc.  hereby allege and assert:

## I.    INTRODUCTION

1.    This is an action against both Cold Steel, Inc., a California corporation ("Cold Steel") and its recent acquirer GSM LLC which does business as GSM Outdoors ("GSM"), to recover damages for Cold Steel's purposeful and intentional use of Plaintiffs' Trademark, goodwill, and notoriety to dupe

consumers into buying Cold Steel's products. For a period of more than two years, Defendant Cold Steel has been claiming and falsely advertising that its products are "WATL Compliant" or WATL Approved" or WATL Certified" despite no such authorization from the World Axe Throwing League for use of its name/likeness and no verification or substantiation as to Defendant Cold Steel's products or compliancy. *To the contrary, the World Axe Throwing League has never had any formal business relationship with Defendant Cold Steel, who intentionally and deliberately used the World Axe Throwing League's industry notoriety, status as a sports organization, name recognition, and likeness to gain false legitimacy and sell millions of dollars of products to unsuspecting consumers who believed that Defendants' products were endorsed or affiliated with the World Axe  Throwing League, which they were not.*

## II.    JURISDICTION AND VENUE

2.  This action arises under the Trademark Laws of the United States, including particularly, Sections 43 of the Lanham Act, 15 U.S.C. §1125 and 1114. Jurisdiction is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*, and by principles of pendent jurisdiction. Venue is proper in this District under 28 U.S.C. §§ 1391(b) by virtue of the fact that a substantial part of the events giving rise to the acts complained of herein occurred in this District.

## III.   <u>THE PARTIES</u>

3.  Plaintiff World Axe Throwing League, Inc. ("World Axe") is the global governing body of urban <u>axe throwing</u>.  It is a Delaware Corporation with its main business office located in Ontario, Canada.  Plaintiff does business as The **World Axe Throwing League** ("WATL.")

4.  Plaintiff Lincoln Chicago Holdings, Inc is a Delaware Corporation that holds the WATL trademark which it has licensed to The World Axe Throwing

1  League.

2      5.  Defendant Cold Steel ("Cold Steel") is upon information and belief, a

3  California Corporation, based in Ventura, California, that does business throughout

4  the United States including within this District of California.

5      6.  Defendant GSM LLC ("GSM") is upon information and belief, a limited

6  liability company that does business as GSM Outdoors.  Upon information and

7  belief, within the past few weeks, GSM recently acquired Cold Steel and is now in

8  charge of and responsible for the conduct of Cold Steel.

9      7.  At all times herein mentioned, Plaintiffs are informed and believe and

10  based thereon allege that, at all times herein mentioned, each of the defendants sued

11  herein, were the agents, servants, employees or attorneys of their co-defendants,

12  and in doing the things hereinafter alleged were acting within the purpose, course

13  and scope of such agency and employment, and with the authority, permission and

14  consent of their co-Defendants.

15          **IV.  FACTS GIVING RISE TO THIS ACTION**

16      8.      World Axe is the preeminent global governing body and league for

 

24  the sport of axe throwing. Axe throwing is a competition sport, somewhat similar

25  to darts, where players throw axes at a wooden target and are awarded points based

26  on the quality of their throws in relation to a bulls-eye.

27      9.      World Axe was created in 2017 with the idea of bringing together

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

indoor axe throwing facilities from around the world under one professional axe throwing association. Since then, World Axe has grown its business and its name into a globally recognized brand with members being found in more than 20 countries. In addition, World Axe created the rulebook for the sport of axe throwing and has been an innovator in growing the sport into what it is today.

10.    World Axe was created in 2017 with the idea of bringing together indoor axe throwing facilities from around the world under one professional axe



throwing association. Since then, World Axe has grown its business and its name into a globally recognized brand with members being found in more than 20 countries. In addition, World Axe created the rulebook for the sport of axe throwing and has been an innovator in growing the sport into what it is today.

11.    Defendant Cold Steel manufactures, markets and sells various products including but not limited to knives, swords, archery, and axes.

12.    Since at least as early as February 2017, World Axe has used the distinctive trademark of "WATL" to market and publicize its axe throwing league, tournaments, and other related ventures. WATL is to World Axe and the axe throwing sport as "NFL" is to the National Football League.  An exemplar of WATL's logo is pictured below:

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

4



13.    On or about December 18, 2018, World Axe's predecessor in interest, was granted federal United States Patent and Trademark Office ("USPTO") registration for the mark "WATL", Registration No. 5628738, under classes 008, 025, 035, and 041 for numerous goods and services, including, without limitation, "axes", "operating a website for coordinating axe throwing events and leagues", and "organizing and operating axe throwing events" (the "Trademark"). The registration was subsequently transferred to World Axe who subsequently transferred it to Plaintiff Lincoln Chicago Holdings, Inc. who subsequently licensed its use to World Axe.

14.    Since its inception, World Axe has always used the Trademark in connection with its business operations, which has been constant, ongoing, and uninterrupted since February 2017.

15.    Obviously, axes are inherently dangerous products that must be used and handled with care.   Additionally, axes must be manufactured and assembled with care.   Within the context of axe throwing competition, care in assembly is vital for safety to prevent mishaps such as the head of an axe separating from the handle when thrown.

16.    Upon information and belief, beginning at least as early as September 2018, without authorization, and in total disregard of World Axe's Trademark and other valuable intellectual property rights, Defendant Cold Steel marketed, advertised and sold substantial sums of axes which were clearly labeled "WATL Compliant" or "Meets WATL regulations" (the "Infringing Axes").   By doing so, Defendant Cold Steel falsely advertised that World Axe endorsed Cold Steel or

5

passed upon the safety and quality of its axes when none of Defendant Cold Steel's axes were ever presented to WATL for a quality control check.

17.    Upon information and belief, the Infringing Axes were also sold on third-party websites where Defendant Cold Steel instructed these third-party companies that the Infringing Axes were "WATL Compliant" or "Meets WATL regulations". Two examples are shown here:




18.    As one can see, Defendant Cold Steel intentionally and knowingly duped consumers into buying the Infringing Axes by misrepresenting to consumers that its products were approved and associated with, endorsed by, or affiliated with World Axe, which they are not.

19.    Defendant Cold Steel did so in order to gain false legitimacy by using the goodwill and notoriety of World Axe in conjunction with representing the axes as "Competition Throwing Hatchet" or "Professional Throwing Axe".

20.    Upon information and belief, a substantial amount of Defendant Cold Steel's consumers were/are axe throwing facilities and individuals who

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

6

purchased large amounts of the Infringing Axes, in part, due to the false representation that the Infringing Axes were "WATL Compliant".

21. World Axe first contacted Defendant Cold Steel on or about September 2018 and demanded that all references to it and its Trademark be taken down immediately. In response, Cold Steel asked if "we can use your logo on our website?", to which World Axe responded "we cannot unless you'd be interested in working out a deal to do so.. [and that] if any axe manufacturer would like to use our name for any axe throwing related product [they will] need to contact us and work out a deal for that ability."

22. Despite being told in unequivocal terms that they would need to enter into an agreement to use the Trademark, Defendant Cold Steel still continued to use the Trademark despite having never obtained permission from World Axe or entering into a "deal for that ability".

23. Despite being told in unequivocal terms that they would need to enter into an agreement to use the Trademark, Defendant Cold Steel still continued to use the Trademark without having presented its line of axes to World Axe for inspection and permission to use the WATL trademark.

24. As of August 2020, numerous Infringing Axes still remained for sale on Defendants' website and social media accounts despite World Axe having made numerous demands to remove all "WATL" references.

25. To make matters worse, Defendant Cold Steel has been selling the Infringing Axes on (or to) a number of third-party sites, presumably having drafted the various product descriptions which also contain unauthorized use of the Trademark and misrepresentation as to false affiliation and/or false endorsement.

26. Defendant Cold Steel's use of the WATL Trademark and likeness were done with the knowledge of World Axe's prior rights in and to the Trademark and with the knowledge that World Axe   did not permit the use. Defendant Cold

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

7

Steel's actions complained of herein were done without regard to World Axe's valuable intellectual property rights and were done with the intent to trade on and benefit from the goodwill and notoriety established by World Axe in and to the Trademark without authorization.

27.     World Axe has spent substantial amounts of time and money building up, advertising, and promoting its WATL and World Axe Throwing League brands ("Brands").  By virtue of the popularity of its brands, its advertising, promotion, and sales, World Axe  has built up and owns extremely valuable goodwill which is symbolized by World Axe's marks.

28.     Defendants' intentional wrongful acts are harming World Axes' brands reputation and are diluting the brands and are disparaging.

29.     If defendants are not stopped from marketing axes and related products using the WATL mark or the World Axe Throwing League mark, then consumers will likely be confused about the source and origin of defendants' products and services and mistakenly conclude that defendants'  products or services are produced by, or associated with and/or endorsed or sponsored by Plaintiffs and/or its lawful licensees.

30.     Alternatively, if defendants are not stopped from marketing axes using the WATL mark or the World Axe Throwing League mark, then consumers will likely be confused about the source and origin of World Axe's (or its licensees') products and services and mistakenly conclude that Plaintiffs' (or its licensees') products or services are produced by, or associated with defendants.

**B.     False Advertising**

31.     Also, in addition to defendants' false association of WATL described above, defendants also falsely advertise and market their products in other ways.

32.     Defendant Cold Steel has been claiming that its products are "WATL approved"  or  "WATL Compliant"  or  "Meets WATL regulations"  without submitting any of its products to World Axe for inspection or certification as to

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

whether or not any of Defendant Cold Steel's axes actually are "approved" or "compliant" or "meets WATL regulations."

33.   Throwing an axe is much more dangerous than throwing a ball or a dart, and consumers, axe throwing participants, spectators, and third party resellers need to be assured that the axes that are used in an axe throwing competition are safe (e.g. so a blade won't separate from the handle when being thrown).   It is not for Defendant Cold Steel to falsely assert and advertise that World Axe certifies defendants' axes are safe or compliant without World Axe's assent.  It is not for Defendant Cold Steel to say if its axes are suitable for WATL League use or if they meet Plaintiff's expectations for WATL branded axes. Further it is not for Defendant Cold Steel to falsely assert and advertise that World Axe certifies defendants' axes meet World Axe's length or weight (or other regulations) without World Axe's assent.

34.   Despite being told on several occasions they are not permitted to use the WATL trademark, Defendant Cold Steel continued to do so, defying World Axe's requests.   Defendant Cold Steel's behavior is no different than a basketball manufacturer (without permission from the NBA) saying its basketball is approved by the NBA, or a football manufacturer (without permission from the NFL) saying its football is approved by the NFL.  Defendants' pronouncements that its axes are "WATL approved" or "WATL Compliant" or "Meets WATL Regulations" amount to false advertising and false promotion, in addition to false association.

35.   Defendants' deceptive advertising and marketing tactics gives them an unfair competitive advantage against Plaintiffs and all other lawful licenses who actually obtain approval from World Axe, because Defendants are able to offer their fake WATL certified axes at prices lower than would ordinarily be the case if they paid to certify the axes as WATL compliant.

36.   Defendants' deceptive advertising and marketing harms consumers, axe throwing competitors, spectators and third party sellers who mistakenly buy

defendants' fake WATL certified or approved or compliant axes thinking World Axe actually weighed in on the decision making process to determine whether the axes are compliant or otherwise safe.

## COUNT I

## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

### (Unfair Competition  -- Against All Defendants)

37.    Plaintiffs reallege the allegations in paragraphs 1 though 36.

38.    Defendants have large resources with which to market and advertise its axes.  Currently, Defendants' resources exceed those of Plaintiffs who market its own axes while popularizing  the sport of axe throwing.  Consequently, marketing and advertising efforts by Defendants are likely to mislead consumers to believe that Plaintiffs' own branded axes may actually be manufactured by Cold Steel.  If defendants are able to continue their wrongful acts, consumers are likely to be misled to believe that World Axe is applying its *WATL* Trademark  to defendants' axes and think Plaintiffs' axes are made by Defendant Cold Steel.

39.    Also, Defendants' use of the WATL mark for axes so closely resembles Plaintiffs' WATL mark on its products and services that the public is likely to be confused and deceived, and to assume erroneously that defendants' goods are those of Plaintiffs, or that defendants are in some way connected with, sponsored by, or affiliated with or endorsed by Plaintiffs, all to Plaintiffs' detriment and irreparable damage.

40.    Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiffs, nor have Plaintiffs approved or authorized any of the goods or services offered or sold by defendants.   Despite being unequivocally told World Axe would not agree to an endorsement deal, Defendants ignored that communication and proceeded to act and continued to act as if their axes were in fact endorsed by World Axe, which they were not.

41.    Plaintiffs have no control over the nature and quality of the goods

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

and/or services offered and sold by defendants or its licensees. Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiffs as being the believed source of said failure, neglect, or default, thereby hampering Plaintiffs' efforts to continue to protect its outstanding reputation and preventing World Axe from further building its reputation. Said failure, neglect, or default will result in loss of revenue by World Axe and loss of value of World Axe's considerable expenditures to promote its goods and services under the WATL mark, all to the irreparable harm of Plaintiffs.

42.    In fact, defendants marketing of its branded axes using the WATL mark interferes with World Axe's sales of its own WATL branded axes.

43.    Without the knowledge or consent of Plaintiffs, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products branded and/or advertised or promoted under the name WATL and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and/or sold, products and services using the WATL mark through persons not authorized, employed by, or associated in any way with Plaintiffs and have used the aforementioned trade names and trademarks as a false designation and false representation for axes.

44.    None of defendants' activities complained of in this complaint have been authorized by Plaintiffs, and such unauthorized use by Defendants of Plaintiffs' trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiffs' trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

45.    Upon information and belief, Defendants have acted with the unlawful purpose of:

a. Improperly taking advantage of the valuable goodwill belonging to Plaintiffs;

b. Soliciting Plaintiffs' customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed under the confusingly similar WATL mark through persons not authorized by, employed by, or associated in any way with Plaintiffs;

c. Inducing others to infringe (and/or contributing to others to infringe) Plaintiffs' trademarks and trade names; and

d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiffs to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiffs and its licensed trademarks and trade names.

46. Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

47. If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiffs will be damaged as alleged in this complaint, and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants conduct as alleged in this complaint, Plaintiffs' business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

48. Defendants have hijacked the WATL trademark. Hijacking Plaintiffs' WATL trademark improved the likelihood that consumers would notice the accused product in an online website and then subsequently buy it. Hijacking Plaintiffs' WATL mark lowered defendants' costs to advertise, market and promote while improving defendants' sales and profits.

12

49.     Defendants' aforementioned acts and conduct are being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiffs have worked hard to develop.  Plaintiffs are therefore entitled to treble damages arising therefrom, disgorgement of defendants' profits, as well as reimbursement of Plaintiffs' attorneys' fees and costs.

50.     The intentional nature of defendants' acts makes this an exceptional case under 15 U.S.C. §1117(a).

51.     The intentional nature of Defendants' acts and conduct makes this a case suitable for an award of Three Times Defendants' profits plus attorney's fees.

## COUNT II

## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

### (Trademark Infringement --Against All Defendants)

52.     Plaintiffs repeat each allegation contained in paragraphs 1 through 51 as though set forth herein at length.

53.     Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiffs' registered mark.

54.     Defendants' goods are so closely related to Plaintiffs' goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sales of their axes branded or promoted with the WATL mark, as packaged, advertised and promoted, are those of Plaintiffs, or that Defendants are in some way connected with, sponsored by, or affiliated with or endorsed by Plaintiffs, all to Plaintiffs' detriment and irreparable damage.

55.     Defendants are not affiliated with, connected with, endorsed by, or  sponsored by Plaintiffs.  Furthermore, Plaintiffs  have not approved any of the goods or services offered or sold by Defendants.

56.     Defendants aforesaid infringing conduct has been willful and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiffs have worked hard to develop.  Defendants' aforesaid infringing conduct has been willful and

13

with knowledge that the sale, marketing, advertisement, and promotion of their axes in conjunction with the WATL trademark will hinder the prospects of future commercial success of Plaintiffs' products and services.  Plaintiffs are therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiffs' attorneys' fees and costs.

**COUNT III**

**VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a) FOR FALSE ADVERTISING**

**(Against all Defendants)**

57.    Plaintiffs repeat each allegation contained in paragraphs 1 through 56 as though set forth herein at length.

58.    Since at least as early as February 2017, World Axe has used the distinctive trademark of "WATL" to market and publicize its axe throwing league, tournaments, and other related ventures. WATL is to World Axe and the axe throwing sport as "NFL" is to the National Football League.

59.    Defendant Cold Steel's use of the phrases "WATL approved" and/or "WATL Compliant" or "Meets WATL regulations" was false as only World Axe can approve an axe for use in its competitions.   As the owner of the WATL mark it is for World Axe to inspect and review an axe and determine if it meets its safety and competition throwing regulations and is approved for use.

60.    Defendant Cold Steel advertising and promotion of its axes using the phrases "WATL approved" and/or "WATL Compliant" or "Meets WATL regulations" misrepresented the nature, characteristics, and qualities of its axes.

61.    Defendants' deceptive marketing of its products in commercial advertising  and promotion gives defendants an unfair commercial advantage against World Axe who also sells its own axes that are obviously WATL approved.

62.    As a result of the false advertising of Defendants, consumers are also deceived into buying what turns out to be a non-approved and counterfeit product.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

63.     As such, defendants' marketing, promotion and sales of its axes violate the false advertising provisions of 15 USC 1125 (a).

## COUNT IV

## CONTRIBUTORY TRADEMARK INFRINGEMENT

### (Against all Defendants)

64.     Plaintiffs repeat each allegation contained in paragraphs 1 through 63 as though set forth herein at length.

65.     Upon information and belief, beginning at least as early as September 2018, Cold Steel also began selling Infringing Axes on the websites of third-parties.

66.     On information and belief, Cold Steel drafted, prepared, edited, revised, and/or caused the Trademark to appear on the websites of third-parties and/or continued to supply third-party websites with product knowing they would infringe upon Plaintiffs' Trademark. In doing so, Defendant Cold Steel has materially encouraged, enabled, induced and/or contributed to these third-parties infringing  upon the rights of World Axe and the Trademark.

67.     On information and belief, Cold Steel's egregious and intentional use of World Axe's Trademark without its authorization to sell the Infringing Axes undoubtably caused the confusion of likely tens of thousands of unknowing consumers who purchased the Infringing Axes due to being "WATL Compliant", which they were not.

68.     Defendants therefore are contributory liable for the infringement on the websites of these third-parties in violation of the Lanham Act, 15 U.S.C. §1114(1)(a) and §1125(a).

## COUNT V

## UNFAIR COMPETITION & FALSE ADVERTISING – COMMON LAW, AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.

### (Against All Defendants)

15

69.     Plaintiffs repeat each allegation contained in paragraphs 1 through 68 as though set forth herein at length.

70.     Since at least as early as February 2017, World Axe has used the distinctive trademark of "WATL" to market and publicize its axe throwing league, tournaments, and other related ventures. WATL is to World Axe and the axe throwing sport as "NFL" is to the National Football League.

71.     Despite knowing that the Trademark was owned by World Axe and that it had no permission to use it in connection with its business, Defendant Cold Steel has intentionally and knowingly duped consumers into buying the Infringing Axes by misrepresenting to consumers that its products were associated with, endorsed by, or affiliated with World Axe, which they are not. Defendant Cold Steel did so in order to gain false legitimacy by using, without authorization, the goodwill and notoriety of World Axe.

72.     Defendants has engaged in unfair competition perpetrated against Plaintiffs by reason of the conduct alleged herein which was "unlawful, unfair or fraudulent business act or practice" as prohibited under Cal. Bus. & Prof. Code § 17200, et seq.,

73.     Defendants actions of claiming that the Infringing Axes were "WATL Compliant" deceived, mislead, betrayed and defrauded consumers to believe that these representations were associated with, endorsed by, or affiliated with World Axe, which they were not.

74.     Defendants egregious and intentional use of World Axe's Trademark to sell the Infringing Axes undoubtably caused confusion with likely tens of thousands of unknowing consumers who purchased the Infringing Axes due to being "WATL Compliant", which they were not.

75.     Pursuant to Cal. Bus & Prof. Code §17206, Defendant Cold Steel is liable for up to $2,500.00 in civil penalties for each and every  separate act of unfair competition as alleged herein.

16

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

76.    Upon information and belief, Defendant Cold Steel sold millions of dollars' worth of Infringing Axes by using the Trademark without World Axe's consent or authorization and has been damaged in an amount to be proven at trial but to reasonably be in excess of $2.5 million dollars.

77.    Moreover, World Axe is entitled to seek (and does seek) punitive damages under Cal. Civ. Code §3294 "where it is proven by clear and convincing evidence that Defendant Cold Steel has been guilty of oppression, fraud or malice...".

78.    As a direct and proximate result of Defendants wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to its business reputation and goodwill.

79.    Plaintiffs are entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of their conduct.

80.    Plaintiffs are also entitled to its attorneys' fees and costs under, among other provisions of law, Code Civ. Pro. § 1021.5, or otherwise to the extent permitted by law.

**COUNT VI**

**UNFAIR COMPETITION – COMMON LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 et seq.**

**(Against All Defendants)**

81.  Plaintiffs repeat each allegation contained in paragraphs 1 through 80 as though set forth here at length.

82.    Defendants' wrongful use of  Plaintiffs' trade names and trademarks misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

17

83.    Defendants' wrongful use of Plaintiffs' trade name and trademarks and their deceptive use of the WATL trademark, are likely to deceive and will continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

84.    As a result of the conduct described above, Defendants have been and/or will be unjustly enriched at the expense of Plaintiffs and the general public. The interests of the general public and Plaintiffs are, therefore, closely related.

85.    Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing axes approved by, sponsored by or endorsed by Plaintiffs but instead were purchasing Defendants' goods which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

86.    Additionally, Defendants have been unjustly enriched, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing axes approved by or endorsed by Plaintiffs but instead purchased non-approved and non-endorsed axes.  Defendants' mislabeled axes and false advertisements affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

87.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs, on behalf of themselves and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such support for acts of unfair competition and false advertising, and enjoining Defendants from continuing to distribute, market, promote, advertise, offer for sale, and sell, Defendants' infringing axes that contain any of Plaintiffs' trademarks (or names confusingly similar to Plaintiffs'

MACHAT & ASSOCIATES, P C
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

trademarks) or to otherwise falsely advertise or conduct business via the unlawful, deceptive, unfair or fraudulent business acts and practices, and the untrue and misleading advertising complained of herein.   Plaintiffs additionally request an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by means of their support of such acts of unfair competition and false advertising, damages, interest and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.     That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiffs, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiffs at common law.

2.     That the Court adjudge and decree that Defendants have infringed Plaintiffs' registered trademarks willfully and intentionally.

3.     That the Court adjudge and decree that Defendants unlawfully diluted and diminished Plaintiffs' rights in its trademarks.

4.     That the Court adjudge and decree that Defendants unlawfully induced others to infringe upon Plaintiffs' trademarks.

5.     That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

   a.   Using the phrases "WATL approved" and/or "WATL Compliant" or "Meets WATL regulations" or any other word or words which are similar to, or a colorable imitation of, Plaintiffs' trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of axes.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

MACHAT & ASSOCIATES, P C
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

b. Selling, offering to sell, marketing, distributing, advertising and/or promoting any axe with the mark WATL or the words World Axe Throwing League displayed on any product, packaging, advertising or promotional materials;

c. Representing directly or indirectly by words or conduct that any axe and/or axe related product, goods or services offered for sale, sold, promoted, or advertised by Defendants, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiffs;

d. Aiding or abetting in unfair competition against Plaintiffs;

e. Aiding or abetting in false advertising; and

f. Inducing others to engage in any of these aforementioned acts.

6. That the Court award an amount to be determined at trial but at least an amount equivalent to treble the amount of Defendants' illicit profits or Plaintiffs' lost profits, whichever is greater.

7. That the Court award, pursuant to Cal. Bus & Prof. Code §17206, $2,500.00 in civil penalties for each and every axe sold by Defendant Cold Steel.

8. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising to cover a national campaign of advertising and promotion to make up for the damage done by defendants advertising and promotion.

9. That the Court award an amount representing Defendants future projected profits it will or has made as a result of their infringement.

10. That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiffs.

11. That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

12. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiffs, in its discretion, to apply to this Court at any time for such

further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

Respectfully submitted,

MACHAT & ASSOCIATES, P.C.

Dated:  December 17, 2020          By: _Michael Machat_

Michael Machat (CA SBN 109475)
Machat & Associates, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Tel: (310) 860-1833
Email: Michael@machatlaw.com

Attorneys for Plaintiffs
World Axe Throwing League, Inc. and
Lincoln Chicago Holdings, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury on all issues raised by the Complaint.

Respectfully submitted,

MACHAT & ASSOCIATES, P.C.

Dated:  December  17 , 2020

By:  *Michael Machat*

Michael Machat (CA SBN 109475)
Machat & Associates, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Tel: (310) 860-1833
Email: Michael@machatlaw.com

Attorneys for Plaintiffs
World Axe Throwing League, Inc. and
Lincoln Chicago Holdings, Inc.