**LightGabler**
By: Glenn J. Dickinson (SBN 159753)
     Brier Miron Setlur (SBN 273335)
760 Paseo Camarillo, Suite 300
Camarillo, CA 93010
(805) 248-7208
(805) 248-7209 (fax)
gdickinson@lightgablerlaw.com
bsetlur@lightgablerlaw.com

Attorneys for Defendants/
Counterclaimants Cold Steel, Inc., and
Good Sportsman Marketing LLC (sued
as GSM LLC) and Defendant Lynn
Thompson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD AXE THROWING LEAGUE, INC, and LINCOLN CHICAGO HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> COLD STEEL, INC., LYNN THOMPSON and GSM LLC d/b/a GSM OUTDOORS, <br><br> Defendants. | Case No. 2-cv-11407 JAK (Ex) <br><br> Complaint Filed:  December 17, 2020 <br> District Judge:    John A. Kronstadt <br> Magistrate Judge: Charles F. Eick <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS COLD STEEL, INC., GOOD SPORTSMAN MARKETING LLC AND LYNN THOMPSON** |
| AND RELATED CROSS-ACTION. | **Date:    August 1, 2022** <br> **Time:    8:30 a.m.** <br> **Ctrm:   10B** |

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 1, 2022, in Courtroom 10B of the United States District Court for the Central District of California, Los Angeles, located at First Street Courthouse, 350 W. First Street, Los

Angeles, California, at 8:30 a.m. or as soon thereafter as this matter may be heard, Defendants/Counterclaimants Cold Steel, Inc., and Good Sportsman Marketing LLC and Defendant Lynn Thompson (collectively "Defendants") will and hereby does move pursuant to Federal Rule of Civil Procedure 56 for summary judgment. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 17, 2022.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, the supporting declarations of Glenn J. Dickinson, Lynn C. Thompson, Ric Valdez, Cameron Caldwell, Doug Mann, and Matt Bando**,** all evidence and exhibits submitted with the motion and, all the pleadings and evidence of record in this matter, and such argument of counsel as the Court may allow.

Dated: March 29, 2022          **LightGabler**

By:   /s/ Glenn J. Dickinson
Glenn J. Dickinson
Brier Miron Setlur
Attorneys for Defendants/
Counterclaimants Cold Steel, Inc., and
Good Sportsman Marketing LLC and
Defendant Lynn Thompson

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT .................................................................. 9

II.    STATEMENT OF FACTS ..................................................................... 9

    A.   Cold Steel Was an Established Brand for Throwing Axes and Tomahawks Long Before the World Axe Throwing League Existed. ................................................................................ 10

    B.   In 2019, Cold Steel Truthfully Stated on Its Website That the Axe Gang Hatchet Met WATL Requirements for Competitive Axe Throwing ................................................................................ 11

    C.   Cold Steel Truthfully Stated in Its 2020 Catalog That the Competition Throwing Hatchet Met WATL Requirements for Competitive Axe Throwing........................................................ 12

    D.   Cold Steel Truthfully Stated on Its Amazon Store Page That the Competition Throwing Hatchet Met WATL Requirements for Competitive Axe Throwing........................................................ 13

    E.   Cold Steel Has Removed All References to WATL from Marketing Materials ............................................................... 13

III.   ARGUMENT...................................................................................... 14

    A.   Summary Judgment Should Be Entered In Favor Of Defendants On Counts I, II, and III, Because Each Count Is Barred By The Nominative Fair Use Doctrine.................................................. 15

        1.   Plaintiffs' Services Are Not Readily Identifiable Unless The Trademark Is Used....................................................... 16

IV.    COLD STEEL USED ONLY SO MUCH OF THE PLAINTIFFS' TRADEMARK AS WAS REASONABLY NECESSARY. ................. 18

V.     THE DEFENDANTS HAVE DONE NOTHING IN CONJUNCTION WITH THE PLAINTIFF'S TRADEMARK TO SUGGEST SPONSORSHIP OR ENDORSEMENT. .......................................... 19

    A.   Summary Judgment Should Also Be Entered As To Count III, Because the Defendants Made No False Statements. ........... 21

    B.   Summary Judgment Should Be Entered As To Counts V and VI

Because They Are Substantially Congruent With The Lanham Act
Claims ...................................................................................... 23

C.   Summary Judgment Should Be Entered As To Count IV Because
There Was No Intentional Infringement or Knowledge Of
Infringement By Defendants. ................................................... 24

VI.   CONCLUSION ................................................................................... 26

1

# TABLE OF AUTHORITIES

2

**Cases**

3

4

5

Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174

F.3d 1036, 1046 n. 6 (9th Cir.1999)............................................................ 15

6

7

8

Cairns v. Franklin Mint Co., 292 F. 3d 1139, 1150, 1151 and n. 8 (9th Cir.

2002) ...................................................................................................16,17

9

Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ..................... 24

10

11

12

Cytosport, Inc. v. Vital Pharms., Inc., 894 F. Supp. 2d 1285, 1295 (E.D. Cal.

2012) ............................................................................................................. 24

13

14

Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124

(9th Cir.2006) ............................................................................................... 15

15

16

Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855 (1982) ................. 25

17

18

Kythera Biopharmaceuticals, Inc. v. Lithera, Inc., 998 F. Supp. 2d 890, 897

(C.D. Cal. 2014) ........................................................................................... 23

19

20

21

Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122

(2014).............................................................................................................. 15

22

23

24

Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137,

1144 (9th Cir. 2011) ..................................................................................... 15

25

26

New Kids on the Block v. News America Publishing, Inc., 971 F. 2d 302 (9th

Cir. 1992) ...........................................................................15, 16, 17, 18, 19

27

28

Perfect 10, Inc. v. Visa Inter. Services Ass'n, 494 F. 3d 788, 804, 807 (9th

Cir. 2007) ........................................................................................... 25

Rice v. Fox, 330 F. 3d 1170, 1181 (9th Cir. 2003) ....................................... 23

Skydive Ariz., Inc. v. Quattrocchi, 673 F.3d 1105, 1110, 1111 (9th Cir. 2012)

.............................................................................................................. 21

Tiffany (NJ) Inc. v. eBay, Inc., 600 F. 3d 93, 106 (2nd Cir. 2010) ............... 25

Toho Co. v. William Morrow & Co., 33 F. Supp. 2d 1206, 1209, 1211 (C.D.

Cal 1998) .............................................................................................. 18

Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F. 3d 1171, 1176-77 (9th Cir.

2010) ..................................................................................................... 20

Volkswagenwerk Aktiengesellschaft v. Church, 411 F. 2d 350, 352 (9th Cir.

1969) ..................................................................................................... 18

Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1079 (C.D. Cal.

2012) ..................................................................................................... 23

William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 257, 258 (9th Cir. 1995)

.............................................................................................................. 22

William H. Morris Co. v. Group W. Inc., 67 F.3d 310 (9th Cir. 1995) ............ 23

Williams v. UMG Recordings, Inc., 281 F. Supp. 2d 1177, 1186 (C.D. Cal.

2003) ..................................................................................................... 24

**Statutes**

15 U.S.C. § 1114 .................................................................................. 14, 15

15 U.S.C. § 1125 ...................................................................................... 15

1

15 U.S.C. § 1125(a) ................................................................... 14, 15

15 U.S.C. § 1125(a)(1)(A) ............................................................ 15

15 U.S.C. § 1125(a)(1)(B) ............................................................ 15

15 U.S.C. § 1125(a)(1)(13) ........................................................... 21

California Business & Professions Code § 17200 ......................... 14, 23, 24

California Business & Professions Code § 17500 ................................ 14, 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#1072051          NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

## **STATEMENT UNDER LOCAL RULE 7-3**

2

3      This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on March 17, 2022.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants/Counterclaimants Cold Steel, Inc. ("Cold Steel"), and Good Sportsman Marketing LLC and Defendant Lynn Thompson (collectively, "the defendants") respectfully submit the following Points and Authorities in support of their Motion for Summary Judgment.

## I.   SUMMARY OF ARGUMENT

People have been throwing tomahawks and hatchets at targets for centuries. In recent years, throwers have started organizing in clubs and leagues, and the business world has responded with indoor axe-throwing venues. Plaintiff World Axe Throwing League ("WATL") is a recently formed company seeking to capitalize on this trend. Cold Steel is a long-established manufacturer or knives, swords, and many other edged weapons, including tomahawks and hatchets. When Cold Steel truthfully stated in 2019 and 2020 marketing materials that two of its axes met WATL regulations for use in the league's competitions, the plaintiffs flew off the handle.

The plaintiffs assert trademark and false advertising claims under the Lanham Act and related California statutes, and a contributory infringement claim involving statements by retailers of Cold Steel products. This is a clear-cut example of nominative fair use. Cold Steel used no more of the plaintiffs' trademark than was necessary, and Cold Steel made no other representations suggesting affiliation or sponsorship by WATL. No other defendants committed acts making them liable. The defendants respectfully request that summary judgment be granted on all of the plaintiffs' claims.

## II.   STATEMENT OF FACTS

Cold Steel has designed, manufactured, and sold knives and edged weapons and other products since 1980. The company makes a wide variety of products. Declaration of Lynn Thompson ("Thompson Declaration"), ¶ 4 and Exhibit 1 (2020 Cold Steel product catalog). Cold Steel has

1  manufactured and sold axes since 1980. Id. ¶ 8.

2  Defendant Cold Steel operated as an independent business from 1980
3  through December 2020, when all of the outstanding stock of Cold Steel was
4  acquired by defendant Good Sportsman Marketing LLC. Thompson
5  Declaration, ¶ 3.

6  **A.    Cold Steel Was an Established Brand for Throwing Axes and**
7  **Tomahawks Long Before the World Axe Throwing League**
8  **Existed.**

9  At least as early as 1991, Cold Steel started making tomahawks that
10  were suitable for chopping and cutting as well as for other uses, including
11  throwing. In the following years, Cold Steel developed and sold multiple
12  designs of tomahawks that were suitable for throwing, at targets or in self-
13  defense. Thompson Declaration, ¶ 8.

14  In 2011, Lynn Thompson decided to design and sell a hand axe of the
15  type frequently used in martial arts movies. He called this item "the Axe
16  Gang," Model No. 90AXG. Thompson Declaration, ¶ 9. At the time the Axe
17  Gang was introduced, Cold Steel also sold 10 models of tomahawks that
18  were suitable for throwing. Id.

19  By 2019, the Cold Steel brand was well-established in the product line
20  of throwing axes and tomahawks, having sold these types of products for
21  almost 30 years. Id. ¶ 10. At that time, the competitive sport of axe throwing
22  was gaining popularity, and several companies started private leagues,
23  similar to bowling leagues. One of these was plaintiff World Axe Throwing
24  League, or WATL. Declaration of Glenn Dickinson ("Dickinson Declaration"),
25  ¶ 2 and Exhibit 7 (excerpts from Deposition Transcript of Matt Bando), at
26  transcript pages 32-33.

27  In 2019, Cold Steel introduced another model of hand axe, designed
28  specifically for competitive axe throwing. This item was called "the

Competition Thrower" or "the Competition Throwing Hatchet," Model No. 90AXF. Thompson Declaration, ¶ 11. The 2020 print catalog describing the Competition Throwing Hatchet stated that the hatchet "now meet[s] NATF and WATL regulations." Id. and Exhibit 1, at 75 (Bates No. CS00313).

In 2021, Cold Steel introduced another model of hand axe designed for competitive axe throwing. This item was called "the Professional Thrower," Model No. 90AXA. Thompson Declaration, ¶ 12.

**B.    In 2019, Cold Steel Truthfully Stated on Its Website That the Axe Gang Hatchet Met WATL Requirements for Competitive Axe Throwing**

Between January and August 2019, the Cold Steel webpage featuring the Axe Gang hatchet included the phrase "Meets NATF, WATL and IKTHOF regulations". Dickinson Declaration, ¶ 2 and Exhibit 7 (excerpts from Deposition Transcript of Matt Bando), at transcript pages 98-100; id. ¶ 4 and Exhibit 45 (Bando Deposition Exhibit 45). The National Axe Throwing Federation ("NATF") is an organization separate from the plaintiff. Id. ¶ 7 and Exhibit 9 (excerpts from Deposition Transcript of Mario Zelaya), at transcript page 68. The International Knife Throwing Hall of Fame ("IKTHOF") is an organization separate from WATL. Id. ¶ 7 and Exhibit 9 (excerpts from Deposition Transcript Mario Zelaya), at transcript pages 68-69.

The Cold Steel Axe Gang hatchet, Model 90AXG, meets WATL Regulations with a slight modification that is commonly made. Dickinson Declaration, ¶ 2 and Exhibit 7 (excerpts from Deposition Transcript of Matt Bando), at transcript pages 32-36; id. ¶ 8 and Exhibit 10 (excerpts from Deposition Transcript of Jason Kearney), at transcript pages 26, 30-32.

After a request from the plaintiff, all references to WATL were removed from the Cold Steel website in August 2019. Declaration of Cameron Caldwell ("Caldwell Declaration"), ¶ 3; Dickinson Declaration, ¶ 2 and Exhibit

1   7 (excerpts from Deposition Transcript of Matt Bando), at transcript pages
2   102-04; id. ¶ 7 and Exhibit 9 (excerpts from Deposition Transcript Mario
3   Zelaya), at transcript page 64.

4   **C.    Cold Steel Truthfully Stated in Its 2020 Catalog That the**
5   **Competition Throwing Hatchet Met WATL Requirements for**
6   **Competitive Axe Throwing**

7   In January 2020, Cold Steel released its annual catalog of its products,
8   in a print version, and in a downloadable PDF file on the Cold Steel website.
9   Thompson Declaration, ¶ 4 and Exhibit 1 (print version); id. ¶ 5 and Exhibit 2
10  excerpts from downloadable version). The page of the 2020 print catalog
11  describing the Competition Thrower, Model No. 90AXF, stated that the
12  hatchet "now meet[s] NATF and WATL regulations." Thompson Declaration,
13  ¶ 4 and Exhibit 1, at 75 (Bates CS00313).

14  Cold Steel also issued a catalog of new products for use at trade
15  shows that included the phrase "Meets NATF and WATL tournament
16  regulations" in connection with the Competition Thrower. Dickinson
17  Declaration, ¶ 2 and Exhibit 7 (excerpts from Deposition Transcript of Matt
18  Bando), at transcript pages 111-12; id. ¶ 3 and Exhibit 5 (Bando Deposition
19  Exhibit 5).

20  The Cold Steel Competition Thrower, Model 90AXF, does in fact meet
21  WATL Regulations. Dickinson Declaration, ¶ 2 and Exhibit 7 (excerpts from
22  Deposition Transcript of Matt Bando), at transcript pages 32-36; id. ¶ 8 and
23  Exhibit 10 (excerpts from Deposition Transcript of Jason Kearney), at
24  transcript pages 18-20, 26, 30-33; id. ¶ 9 and Exhibit 11 (excerpts from
25  Deposition Transcript of Evan Walters), at transcript page 16.

26  In April 2020, Cold Steel removed references to "NATF and WATL
27  regulations" from the online version of the Cold Steel catalog. Caldwell
28  Declaration, ¶ 4.

**D.    Cold Steel Truthfully Stated on Its Amazon Store Page That the Competition Throwing Hatchet Met WATL Requirements for Competitive Axe Throwing**

At some time prior to April 2020, Cold Steel's Amazon store page stated that the Competition Thrower, Model 90AXF, met "NATF and WATL regulations." Dickinson Declaration, ¶ 5 and Exhibit 8 (excerpts from Deposition Transcript of Cameron Caldwell), at transcript pages 166-67; id. ¶ 6 and Exhibit 26 (Caldwell Deposition Exhibit 26). As noted in the previous section, this was a true statement.

Cold Steel removed the reference to "NATF and WATL regulations" from the Cold Steel Amazon page in April 2020, immediately after receiving a demand from Evan Walters of WATL. Dickinson Declaration, ¶ 5 and Exhibit 8 (excerpts from Deposition Transcript of Cameron Caldwell), at transcript pages 166-67; id. ¶ 6 and Exhibit 26 (Caldwell Deposition Exhibit 26).

**E.    Cold Steel Has Removed All References to WATL from Marketing Materials**

No references to WATL have appeared on any Cold Steel-controlled website or in any Cold Steel catalog or other advertising or marketing materials since 2020. Caldwell Declaration, ¶ 6; Dickinson Declaration, ¶ 2 and Exhibit 7 (excerpts from Deposition Transcript of Matt Bando), at transcript pages 102-04; id. ¶ 5 and Exhibit 8 (excerpts from Deposition Transcript of Cameron Caldwell), at transcript pages 166-67; Declaration of Doug Mann ("Mann Declaration"), ¶ 3.

The plaintiff alleges that numerous retailers of Cold Steel products are stating that Cold Steel axes meet WATL regulations. Second Amended Complaint (Doc 24-1, filed May 18, 2021) ¶ 17. The plaintiff further accuses Cold Steel of directing those retailers to make such references. Id. this accusation is false; Cold Steel has never directed any of its dealers or

1    distributors to include references to WATL. Declaration of Ric Valdez, ¶ 3.

2    **III.    ARGUMENT**

3        The plaintiffs asserts six causes of action: Five of them address the

4    same conduct by Cold Steel in referring to WATL without authorization, and

5    the sixth is for contributory infringement. The causes of action are as follows.

6        Count I: False designation of origin under Lanham Act section 43(a), 15

7    U.S.C. § 1125(a).

8        Count II: Trademark infringement based on Lanham Act section 32, 15

9    U.S.C. § 1114.

10       Count III: False advertising under Lanham Act section 43(a), 15 U.S.C.

11   § 1125(a).

12       Count IV: Contributory trademark infringement.

13       Count V: Unfair competition under California Business & Professions

14   Code sections 17200.

15       Count VI: False advertising under California Business & Professions

16   Code sections 17500.

17       Summary judgment should be granted on Counts I, II, and III based on

18   the fair use doctrine. Summary judgment should be granted on Count III on

19   the additional ground that the defendants did not make any false statement of

20   facts.

21       Summary judgment should be granted on Counts V and VI on the

22   grounds that these state law claims are derivative of the Lanham Act claims.

23       Summary judgment should be granted on Count IV on the ground that

24   none of the defendants induced any other person to infringe on the plaintiff's

25   trademark.

26   / / /

27

28   / / /

**A.    Summary Judgment Should Be Entered In Favor Of Defendants On Counts I, II, and III, Because Each Count Is Barred By The Nominative Fair Use Doctrine.**

The plaintiffs' Count I is based on section 43(a), 15 U.S.C. § 1125(a), and involves allegations of false designation of origin. Count II is based on Lanham Act section 32, 15 U.S.C. § 1114.

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.' " Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir.2006)).

A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. section 1114. Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 n. 6 (9th Cir.1999).

In Count III, the plaintiffs allege false advertising under Lanham Act section 43(a), 15 U.S.C. § 1125(a). "Section 1125(a) … creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014).

The defendants asserted the fair use doctrine as their seventh affirmative defense, in the Answer to Second Amended Complaint (Doc 27, filed 6/1/2021). The nominative fair use doctrine provides a defense to Counts I, II, and III.

In New Kids on the Block v. News America Publishing, Inc., 971 F. 2d 302 (9th Cir. 1992), the nominative fair use doctrine provided a complete defense to alleged unfair competition, trademark infringement, and false

1  advertising claims under the Lanham Act. To establish a nominative fair use
2  defense, a defendant must prove three elements:

> First, the [plaintiff's] product or service in question must be one
> not readily identifiable without use of the trademark; second, only
> so much of the mark or marks may be used as is reasonably
> necessary to identify the [plaintiff's] product or service; and third,
> the user must do nothing that would, in conjunction with the mark,
> suggest sponsorship or endorsement by the trademark holder.

9  <u>Id.</u> at 308.  The nominative fair use defense is implicated "where a defendant
10 has used the plaintiff's mark to describe the plaintiff's product, even if the
11 defendant's ultimate goal is to describe his own product." <u>Cairns v. Franklin</u>
12 <u>Mint Co.</u>, 292 F. 3d 1139, 1150, 1151 and n. 8 (9th Cir. 2002) (mint's use of
13 princess' name and likeness on its products was fair use, under nominative
14 fair use defense to Lanham Act false endorsement claim)

15      In <u>New Kids on the Block</u>, the defendant newspaper used the plaintiff's
16 trademark, the name of a band, to publicize the defendants' telephone polls
17 about the plaintiff. <u>Id.</u> at 304. The defendant used the trademark to identify
18 the plaintiff, not to identify the defendant's newspaper. <u>Id.</u> at 308. The Ninth
19 Circuit held that the nominative fair use defense applied to the defendants'
20 use of the trademark. <u>Id.</u> at 308-09.

21      Similarly, in this case, Cold Steel used the plaintiffs' trademark (the
22 name "WATL") to describe the plaintiffs' services, namely, regulations
23 associated with axe-throwing competitions. Like the defendants in <u>New Kids</u>
24 <u>on the Block</u>, the defendants here can satisfy all three elements of the
25 nominal fair use defense.

### 1.   Plaintiffs' Services Are Not Readily Identifiable Unless The Trademark Is Used.

28 The first element of the nominative fair use defense is satisfied if the

16

plaintiff's product or service is not readily identifiable without use of the trademark. Cairns, 292 F. 3d at 1151. Here, the plaintiffs' WATL trademark referred to, among other things, organizing and operating competitive axe-throwing events. Second Amended Complaint, ¶ 13. In particular, the plaintiffs' trademark referred to the regulations containing specifications for length, weight, and other physical features of throwing axes that could be used in the plaintiffs' axe throwing competition. The WATL regulations are not readily identifiable without referring to the plaintiffs' trademark. The plaintiffs' regulations are unique to the plaintiffs, and the only way to identify those particular regulations is by referring to the plaintiff.

To satisfy this element, the defendants are not required to show that the plaintiffs' axe-throwing competitions could never be identified or described without using the trademark. The defendants are required only to show that the plaintiffs' services are not readily identifiable without the trademark. The Ninth Circuit reasoned that "[s]ometimes there is no descriptive substitute, and a problem closely related to genericity and descriptiveness is presented when many goods and serves are effectively identifiable only by their trademarks." New Kids on the Block, 971 F. 2d at 306. The Ninth Circuit used the example of the Chicago Bulls professional basketball team: "one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls." Id. Similarly, the Ninth Circuit stated, "one might refer to 'the English princess who died in a car crash in 1997,' but it is far simpler…to refer to 'Princess Diana.'" Cairns, 292 F. 3d at 1153.

By the same analysis, Cold Steel could have instead referred generically to "a popular axe throwing league." In fact, Cold Steel substituted this type of language in its catalog and elsewhere. In April 2020, after

1  receiving a request from the plaintiffs, Cold Steel amended the online version
2  of the catalog to say that the company's Competition Throwing Hatchet
3  "meet[s] regulations for competition axe throwing in your favorite league."
4  Thompson Declaration, ¶ 5 and Exhibit 2, at 3 (Bates No. CS00122). This
5  language obviously does not communicate the same information as "meet[s]
6  NATF and WATL regulations."

7      For these reasons, the first element of the nominative fair use defense
8  is met.

## IV. Cold Steel Used Only So Much of the Plaintiffs' Trademark as Was Reasonably Necessary.

11      The second element of the nominative fair use defense is satisfied if
12  the defendant uses only as much of the plaintiff's trademark as is reasonably
13  necessary to identify the product or service. New Kids on the Block, 971 F.
14  2d at 308. When examining this element, the courts look to see if there are
15  any distinct features that are embodied in the trademark as used by the
16  plaintiff that are not necessary to identify the mark. The Ninth Circuit
17  explained: "a soft drink competitor would be entitled to compare its product to
18  Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive
19  lettering." Id. at 308; see also Volkswagenwerk Aktiengesellschaft v. Church,
20  411 F. 2d 350, 352 (9th Cir. 1969) ("Church did not use Volkswagen's distinct
21  lettering style or color scheme, nor did he display the encircled 'VW'
22  emblem"); cf. Toho Co. v. William Morrow & Co., 33 F. Supp. 2d 1206, 1209,
23  1211 (C.D. Cal 1998) (holding that publisher using GODZILLA trademark
24  used more of mark than reasonably necessary when trademark was written
25  in distinctive lettering style used by trademark owner and its licensees in their
26  merchandising activities).

27      Here, Cold Steel did not use more of the plaintiffs' trademark than was
28  reasonably necessary. The full name of the plaintiffs' organization is the

WORLD AXE THROWING LEAGUE. The plaintiffs also use the following logo:



Second Amended Complaint, ¶ 12. Cold Steel never used the plaintiffs' full name, and Cold Steel never used the plaintiffs' logo. Cold Steel used only the acronym WATL, in plain text.

In addition, the WATL trademark was not prominently displayed in any way. The WATL trademark was in small font and it either was buried within the product description, or appeared off to the side near the bottom of the page. In the Cold Steel printed catalog, WATL appeared only on page 75 in the single phrase "now meet[s] NATF and WATL regulations." Thompson Declaration, ¶ 4 and Exhibit 1. On the Cold Steel webpage, WATL appeared only in the phrase "Meets NATF, WATL and IKTHOF regulations," which was in much smaller type than the product name and price and was much smaller than the product images. Dickinson Declaration, ¶ 4 and Exhibit 45.

Thus, the second element of the nominative fair use defense is met.

**V.    The Defendants Have Done Nothing In Conjunction With the Plaintiff's Trademark To Suggest Sponsorship Or Endorsement.**

The third element of the nominative fair use defense is satisfied if the defendant has done "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." New Kids on the Block, 971 F. 2d at 308.

Cold Steel did not claim or imply that the throwing axes were manufactured, endorsed, or sponsored by the plaintiffs. Cold Steel simply

1  stated that the products met the regulations published by WATL. This was a
2  true statement intended to inform customers about the compatibility of the
3  product with certain venues and tournaments. "Prohibition of such truthful
4  and non-misleading speech does not advance the Lanham Act's purpose of
5  protecting consumers and preventing unfair competition; in fact, it
6  undermines that rationale by frustrating honest communication between the
7  [defendants] and their customers." Toyota Motor Sales, U.S.A., Inc. v. Tabari,
8  610 F. 3d 1171, 1176-77 (9th Cir. 2010) (injunction was overbroad when it
9  prohibited non-confusing uses of plaintiff's trademark).

10      The lack of connection between the parties was strongly reinforced by
11  the fact that the catalog did not reference WATL only, but also two other
12  organizations, the NATF and the IKTHOF. There is no reason to think that a
13  reasonable consumer would assume some sponsorship or endorsement by
14  WATL specifically, as opposed to any of the other organizations. In this
15  context, and considering the other factors, the references to multiple
16  organizations further indicate that these are mere factual statements, not
17  claims of endorsement.

18      No defendant ever stated that Cold Steel had any relationship with the
19  plaintiffs. Furthermore, there is no evidence that the references the WATL
20  caused any customer confusion or misled anyone to think that the plaintiffs
21  sponsored or endorsed Cold Steel products.

22      Moreover, Cold Steel did not use the WATL term gratuitously. Cold
23  Steel referenced WATL only on the specific catalog and website pages
24  depicting the particular throwing axes that met the WATL regulations. Cold
25  Steel did not state or imply a general claim that its entire line of axes and
26  tomahawks met WATL regulations.

27      Finally, Cold Steel removed the references to WATL from all catalogs
28  and websites under its control upon being asked to do so. No reference to

1   WATL has appeared on any websites, catalogs, or other advertising or
2   marketing materials controlled by the defendants since 2020.

3        For these reasons, the third and final element of the nominative fair use
4   defense is met.

5   **A.    Summary Judgment Should Also Be Entered As To Count III,**
6   **Because the Defendants Made No False Statements.**

7        The Court should grant summary judgment in favor of the defendants
8   as to Count III for false advertising under the Lanham Act on an additional
9   ground: Cold Steel's statements were factually true, and, thus, the plaintiffs
10  cannot prove the required elements for a false advertising claim.

11       A false advertising claim under the Lanham Act has five elements:
12  (1) a false statement of fact by the defendant in a commercial
13  advertisement about its own or another's product; (2) the
14  statement actually deceived or has the tendency to deceive a
15  substantial segment of its audience; (3) the deception is material,
16  in that it is likely to influence the purchasing decision; (4) the
17  defendant caused its false statement to enter interstate commerce;
18  and (5) the plaintiff has been or is likely to be injured as a result of
19  the false statement, either by direct diversion of sales from itself to
20  defendant or by a lessening of the goodwill associated with its
21  products.

22  <u>Skydive Ariz., Inc. v. Quattrocchi</u>, 673 F.3d 1105, 1110, 1111 (9th Cir. 2012)
23  (citing 15 U.S.C. § 1125(a)(1)(13)) (defendant's advertisements contained
24  material false statements indicating defendant operated skydiving facilities
25  when in fact it did not, and stating that consumers could redeem defendant's
26  certificates at specific locations when in fact could not).

27       The first element requires a showing that the statement is either literally
28  false or misleading. Here, the plaintiffs cannot prove that Cold Steel's

1  statements were false or misleading. The defendants stated that two of its
2  throwing axes – the Competition Thrower, Model 90AXF, and the Axe Gang,
3  Model 90AXG – met WATL regulations. These statements were true at the
4  time Cold Steel made the statements as to each of the axes.  Cold Steel's
5  products have been widely used in WATL competitions, thus demonstrating
6  that they met the applicable regulations. Dickinson Declaration, ¶ 8 and
7  Exhibit 10 (excerpts from Deposition Transcript of Jason Kearney), at
8  transcript pages 26, 30-32.

9      The plaintiffs further cannot prove by admissible evidence that any
10  statement by the defendants actually deceived or had a tendency to deceive
11  a substantial number of consumers. There is no dispute that, at all times, the
12  Competition Thrower met WATL regulations. At some point, the Axe Gang
13  hatchet required a small modification to meet WATL regulations. Dickinson
14  Declaration, ¶ 2 and Exhibit 7 (excerpts from Deposition Transcript of Matt
15  Bando), at transcript pages 32-36; id. ¶ 8 and Exhibit 10 (excerpts from
16  Deposition Transcript of Jason Kearney), at transcript pages 26, 30-32. No
17  evidence suggests that any consumer ever was denied the opportunity to
18  actually use the Axe Gang hatchet in a WATL competition. In fact, the owner
19  of six WATL-affiliated axe throwing venues testified that he personally used
20  the Cold Steel Axe Gang in the 2018 and 2019 WATL world championships.
21  Dickinson Declaration, ¶ 8 and Exhibit 10 (excerpts from Deposition
22  Transcript of Jason Kearney), at transcript pages 8-9, 30. Therefore, the
23  statement that the Axe Gang "Meets NATF, WATL and IKTHOF regulations"
24  either had no tendency to mislead or was not materially misleading, which
25  negates the second and third elements of the false advertising claim. William
26  H. Morris Co. v. Group W, Inc., 66 F.3d 255, 257, 258 (9th Cir. 1995)
27  (defendant's false statement that it had filed three, not two, lawsuits to
28  enforce its intellectual property rights did not give rise to liability under

Lanham Act, absent evidence that it caused retailers to forego purchasing competitor's product), supplemented sub nom. William H. Morris Co. v. Group W. Inc., 67 F.3d 310 (9th Cir. 1995).

The defendants therefore are entitled to summary judgment on the false advertising claim.

**B.    Summary Judgment Should Be Entered As To Counts V and VI Because They Are Substantially Congruent With The Lanham Act Claims**

Counts V and VI are based on California Business & Professions Code sections 17200 and 17500, respectively. The courts jointly analyze claims for trademark infringement, unfair competition, and false designation of origin under California law and the Lanham Act. Kythera Biopharmaceuticals, Inc. v. Lithera, Inc., 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014) ("[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition") (internal quotation marks omitted); see also Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) (jointly analyzing claims for trademark infringement, false designation of origin, state statutory unfair competition, and state common law unfair competition).

The Court should grant summary judgment in favor of the defendants as to Counts V and VI for violations of California Business & Professions Code sections 17200 and 17500, because those counts are substantially congruent with Counts I, II, and III under the Lanham Act and thus are barred for the reasons stated above.

The Ninth Circuit has routinely recognized that the resolution of a Lanham Act claim is controlling as to the disposition of a state-law unfair competition claim. Rice v. Fox, 330 F. 3d 1170, 1181 (9th Cir. 2003) (unfair competition claim under § 17200 is dependent on false advertisement claim

23

under the Lanham Act); <u>Cleary v. News Corp.</u>, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act"); <u>Williams v. UMG Recordings, Inc.</u>, 281 F. Supp. 2d 1177, 1186 (C.D. Cal. 2003) ("The Ninth Circuit has consistently held that state law unfair competition claims are 'congruent' with Lanham Act claims; Plaintiff's putative state unfair competition claims would fail for the same reasons his Lanham Act claim fails"); <u>Cytosport, Inc. v. Vital Pharms., Inc.</u>, 894 F. Supp. 2d 1285, 1295 (E.D. Cal. 2012) (unfair competition and false advertising under the California Code are substantially congruent to claims made under the Lanham Act).

As set forth in detail above, the plaintiffs' Lanham Act claims fail as a matter of law, because the normative fair use defense applies to bar the claims, and because the plaintiffs cannot prove the required elements for false advertising. Thus, the congruent unfair competition and false advertising claims under California law must also fail. The defendants therefore are entitled to summary judgment as to Counts V and VI.

## C. Summary Judgment Should Be Entered As To Count IV Because There Was No Intentional Infringement or Knowledge Of Infringement By Defendants.

The Court should grant summary judgment in favor of the defendants as to Count IV for contributory trademark infringement because the defendants did not intentionally induce infringement and the defendants did not have the requisite knowledge of infringement.

To be liable for contributory trademark infringement, a defendant must have (1) "intentionally induce[d] another to infringe" his or her trademark, or (2) "continue[d] to supply its product to one whom it knows or ha[d] reason to

know [was] engaging in trademark infringement." <u>Inwood Labs., Inc. v. Ives Labs., Inc.</u>, 456 U.S. 844, 855 (1982); <u>see also</u> <u>Perfect 10, Inc. v. Visa Inter. Services Ass'n</u>, 494 F. 3d 788, 804, 807 (9th Cir. 2007) (payment processing for infringing Internet websites did not constitute secondary trademark infringement and did not induce websites to infringe trademarks)

The plaintiffs must first prove that there was a third party infringement for which the defendants are contributorily liable. The plaintiffs have not presented admissible evidence of any such infringement. But even if such evidence exists, the plaintiffs cannot satisfy either of the two factors under <u>Inwood</u> required to impute contributory liability to the defendants.

The plaintiffs cannot satisfy the first factor for contributory trademark infringement. There is no evidence that the defendants intentionally induced another to infringe on the plaintiffs' trademark. The defendants never directed any of the dealers or distributors to refer to WATL on their websites with respect to any Cold Steel products, including throwing axes. Declaration of Ric Valdez, ¶ 3.

The plaintiffs also cannot satisfy the second factor for contributory trademark infringement. Cold Steel gained knowledge of alleged third-party trademark infringement after the plaintiffs notified Cold Steel in September 2020. The plaintiffs sent the defendants notice of three specific incidents of alleged trademark infringement by third parties. Caldwell Declaration, ¶ 8. The plaintiffs requested that Cold Steel contact two dealers and ask them to remove the reference to WALT from their websites, and Cold Steel immediately complied. <u>Id.</u> A defendant who immediately complies with a request to have a third party remove infringing material is not liable for contributory infringement. <u>Tiffany (NJ) Inc. v. eBay, Inc.</u>, 600 F. 3d 93, 106 (2nd Cir. 2010) (holding eBay was not contributory liable for infringement where eBay immediately removed infringing material from website upon

learning of alleged infringement).

Thus, the plaintiffs cannot prove the defendants engaged in contributory trademark infringement.

## VI.   CONCLUSION

For the foregoing reasons, the defendants respectfully request that the motion for summary judgment be granted.

Dated: March 29, 2022                    **LightGabler**


By:   /s/ Glenn J. Dickinson
_____
Glenn J. Dickinson
Brier Miron Setlur
Attorneys for Defendants/
Counterclaimants Cold Steel, Inc., and
Good Sportsman Marketing LLC (sued as
GSM LLC) and Defendant Lynn Thompson

1

2

## **CERTIFICATE OF SERVICE**

3

4

    I hereby certify that on March 29, 2022, a copy of the foregoing

document was filed electronically with the Clerk of the Court using the

Court's CM/ECF electronic filing system, which would send an electronic

copy of this filing to all counsel of record.

7

8                                                              /s/    Adriana J. Diaz

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#1072051              NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT