Michael Machat, Esq.
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
Telephone: (310) 860-1833
Email: Michael@Machatlaw.com

Attorneys for Plaintiff
World Axe Throwing League, Inc. and
Lincoln Chicago Holdings, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WORLD AXE THROWING LEAGUE, INC, and LINCOLN CHICAGO HOLDINGS, INC. <br><br> Plaintiffs, <br><br> vs. <br><br> COLD STEEL, INC., LYNN THOMPSON, and GSM LLC d/b/a GSM OUTDOORS, <br><br> Defendants. | Case No. 2:20-cv-11407 JAK (Ex) <br><br> **OPPOSITION TO MOTION FOR SUMMARY JUDGMENT;** <br><br> **DECLARATION OF MICHAEL MACHAT IN SUPPORT OF OPPOSITION WITH EXHIBITS SUBMITTED CONCURRENTLY.** <br><br> **SEPARATE STATEMENT SUBMITTED CONCURRENTLY** <br><br> **Date: August 1, 2022** <br> **Time: 8:30 a.m.** <br> **Courtroom: 10B** |

M A C H A T   &   A S S O C I A T E S ,   P . C .
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Telephone: (310) 860-1833
Facsimile:

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES

I.    Introduction……………………………………………………...........1.

II.    Relevant Facts………………………………………………………..2

III.    Legal Standard for Summary Judgment in a Trademark Case with
       Nominal Fair Use as a Defense………………………………………

IV.    Legal standard for Trademark Infringement………………………… 8

V.    Likelihood of Confusion in this Case is Evident……………………..9

VI.    Defendants Fail to Satisfy Any of the Three Elements of the
       Nominative Fair Use.                         ………………………10

       A. Examples of Defendants' use of the WATL mark varied……………12

       B. Defendants admit to trademark infringement and wrongful use of
          the WATL mark. ………………………………………..…………...15

       C. The testimonial evidence demonstrates Defendants
          purposely suggested sponsorship or endorsement by WATL,
          the trademark holder, to sell more Cold Steel axes………….         17

       D. Defendants' attempts at corrective measures conclusively demonstrate
          that it was never necessary for Defendant Cold Steel  to have used the
          WATL mark in its advertising to identify
          the nature of their products sold.…………………………….…..21

i

E.  Defendants' attempts at corrective measures conclusively demonstrates
    that they used the WATL mark more than necessary to describe the Cold
    Steel axes.  ……………………………………………………...22

F.  The nominative fair use defense is based upon the premise that the use(s)
    in question are truthful.  Here, in many instances they were false and
    misleading……………………………………………………...……..22

VII.  Defendants' spoliation of evidence warrants an inference they
      destroyed evidence that is inconsistent with nominative fair use,
      and thus another reason to deny summary judgment………………………..24

VII.  Conclusion                                                          25

MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Telephone: (310) 860-1833
Facsimile:

ii

# Table of Authorities

Page

*Cases*

*Am. Gen. & Accident Ins. Co. v. Findley*, 2013 U.S. Dist. LEXIS 41644 *12 (CACD 2013) .......... 16

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) .......... 9,10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......... 6

*Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1042-43 (9th Cir. 2011) .......... 7

*Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) .......... 9

*Bluetooth Sig, Inc. v. FCA United States LLC*, 463 F. Supp. 3d 1169, 1184 (WWDC 2020) .......... 7

*Brookfield Commc'ns, Inc. v.W. Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999) .......... 8, 9

*Brother Records, Inc. v. Jardine,* 318 F.3d 900, 907-908 .......... 11,12,17,21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......... 6

*Conlon v. United States* 474 F.3d 616, 624 (9th Cir. 2007.) .......... 16

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1124 (9th Cir. 2006); .......... 8

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (1992) .......... 9

*Elements Behavioral Health, Inc. v. Marcus,* 2017 U.S. Dist. LEXIS 217141, *3-5 .......... 7

*Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999) .......... 7, 10

MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Telephone: (310) 860-1833
Facsimile:

*Inwood Labs. Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 853-54 (1982).    4

*JL Beverage* Co., *LLC v. Jim Beam Brands* Ca, 828 F.3d 1098, 1105
(9th Cir. 2016).    7

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d
596, 608 (9th Cir. 2005.)    7

*Marketquest Grp. Inc. v. BIC Corp.,* 316 F. Supp. 3d 1234, 1269.    9

*New Kids*, 971 F.2d 302 (9th Cir. 1992)    7,10,11,23

*Nirvana, LLC v. Mark Jacobs Int'l, LLC*, 2019 U.S. Dist. LEXIS
225708, *36-38    8

*Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165 (9th Cir. 2007)    9

*Playboy Enters. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002)    21

*Rearden*, 683 F.3d at 1207–08    8

*Sengoku Works Ltd. v. RMC Int'l, Ltd*., 96 F.3d 1217, 1219 (9th Cir.
1996    8,9

*Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49 (2d Cir. 1936)    1

*Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 630 (9th Cir.
2005)    8

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
631 (9th Cir. 1987).    7

*Taylor,* 23 F. Cas. at 744.    23

*Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir.
2002)    7,11

*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.
1979).    7

iv

**Rules and Statutes**

Fed.R.Civ.P 36(a)                                                                                     16

Fed.R.Civ.P.36(b)                                                                                    16

Fed.R.Civ.P.56                                                                                        1,6

15 U.S.C. §1114                                                                                        8

15 U.S.C. §1125                                                                                        8

MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Telephone: (310) 860-1833
Facsimile:

TABLE OF EXHIBITS

NO.      Description

1.    WATL Sponsorship Deck

2.    Email String between Matt Bando of Cold Steel and WATL, in which Bando asks for permission to use WATL Mark and is told No.   Emails beginning Nov 30, 2018 and ending January 8, 2019

3.    Trademark Registration No. 5,628,739 for WATL mark with the Trademark Assignment Abstract of Title

4.    Screenshot of Instagram post on January 4, 2019, showing unauthorized use of WATL trademark.

5.    Page from Cold Steel catalogue advertising Cold Steel Competition Throwing Axe meets WATL tournament regulations.

6.    September 23, 2020, screenshot from Cold Steel's customer NasGuns.com showing unauthorized use of WATL trademark.

7.    Screenshot of ColdSteel.com website captured June 25, 2019, by the WayBack Machine and produced by Defendants as CS001817

8.    Screenshot of ColdSteel.com website captured June 25, 2019, by the WayBack Machine and produced by Plaintiff

9.    Video of Matt Bando and Cameron Caldwell discussing defective axe handles on the Cold Steel axes and offering free replacements

10.   Screenshot of Cold Steel's customer Reliks.com website using the WATL mark, produced by Defendants as CS001802

11.   Screenshot of Cold Steel's customer Oso Grande Knives website using the WATL mark, produced by Defendants as CS000198 and CS000199.

12.   Email from Mario Zelaya to Cameron Caldwell, dated September 23,

2020, produced by Defendants as CS000196.

13.   September 23, 2020, email communications between Cold Steel and their customer Knife Center regarding removing references to the WATL mark from the KnifeCenter website, produced by Cold Steel as CS 000197.

14.   Email from WATL to Cold Steel dated April 13, 2020, asking that the Cold Steel remove all references to WATL from their Amazon store, produced by Cold Steel as CS 000175.

15.   April 13, 2020, email from Cameron Caldwell to Ric Valdez, admission of trademark infringement, produced by Cold Steel as CS000183.

16.   Email exchange between counsel re Cold Steel's failure to respond to Request for Admissions and need to file a motion.

17.   Request for Admissions propounded by World Axe Throwing League on Defendant Cold Steel, dated December 1, 2021.

18.   Deposition transcript of witness Benn MacDonald taken February 8, 2022.

19.   Deposition transcript of witness Jason Kearney taken February 8, 2022.

20.   Screenshot from the current Coldsteel.com website of the product page of the Cold Steel Competition Thrower showing the absence of WATL mark.

21.   Screenshot from the current Coldsteel.com website of the product page of the Cold Steel Professional Thrower Axe showing the absence of WATL mark.

22.   Screenshot from the current Coldsteel.com website of the product page of the Cold Steel Axe Gang Hatchet showing the absence of WATL mark.

23.   Printout from the Amazon.ca store showing Defendant Cold Steel's current listing for its Competition Throwing Hatchet.

24.   Email from Cameron Caldwell to Urban Axes stating Cold Steel's goal for its Cold Steel axes to become the pinnacle axe in throwing, dated November 30, 2018, produced by Cold Steel as CS 001135

MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Telephone: (310) 860-1833
Facsimile:

25.    Excerpts from deposition of Ric Valdez, Exec VP of Cold Steel.

26     Excerpts from deposition of Cameron Caldwell.

## I.     Introduction

The Ninth Circuit has ruled repeatedly that summary judgment in a trademark case is rarely granted as the issue of likelihood of confusion is so often fact determinative, the determination of which is within the province of the jury. Defendants' hurried motion for summary judgment does not present an exception. Quite the contrary, the evidence shows that if summary judgment were to be granted, then it should be granted in favor of Plaintiffs pursuant to Fed.R.Civ.P. 56(f).   In setting up their plea for a nominative fair use exception to trademark infringement, Defendants in essence have admitted trademark infringement.   After all, there is no need to put forward any defense of fair use if there is no infringement.

This opposition memorandum will first go through the *Sleekcraft* first use factors to demonstrate a finding of likelihood of confusion and will then discuss how Defendants fail to satisfy all three elements of the nominative fair use defense. Importantly, for the nominative fair use defense to prevail, Defendants need to satisfy all three conditions.   Failure to satisfy one of the elements defeats the defense.  Here Defendants fail all three elements, making summary judgment for Plaintiffs appropriate.

Most remarkable about Defendants' motion are the facts omitted.   It omits discussing the instances in which Defendants falsely claim their axes meet WATL regulations, and it omits discussing the testimony of the two witnesses who believed WATL had endorsed and approved the Cold Steel axes.  Judge Learned Hand wrote in the copyright context, "No plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49 (2d Cir. 1936).   Similarly, one cannot excuse blatant trademark infringement by pointing to instances in which he does not infringe.   As will be seen from the discussion below, Defendants are trying to squeeze a square peg into a round hole. The facts of this case simply do not fit the nominative fair use defense.   Thus Defendants' motion for summary judgment,  which is based on nominative fair use

1

1   as to each claim, must be denied.

2   **II.        Relevant Facts.**

3          Plaintiff World Axe Throwing League, Inc ("WATL") is one of two

4   organizations that runs axe throwing competitions.  The other organization is the

5   National Axe Throwing Federation ("NATF") now known as International Axe

6   Throwing Federation ("IATF").    Plaintiffs runs the website

7   www.worldaxethrowingleague.com & store.worldaxethrowingleague.com.   The

8   website describes its mission as follows:

9          The World Axe Throwing League ("WATL") is the global governing body

10         for the sport of Axe Throwing. Our mandate is to strengthen and support

11         the sport of Axe Throwing by providing a source for standardized, global

12         Axe Throwing competition. Our mission is to unify the sport of Axe

13         Throwing through standard practices, common goals and industry-wide

14         support.

15         Together, Plaintiffs World Axe Throwing League, Inc and Chicago Lincoln

16   Holdings, Inc. (jointly referred to as "WATL") control the trademark WATL and use

17   it and license its use to axe throwing venues and axe manufacturers, much like the

18   National Basketball Association (NBA) uses and licenses the mark NBA to

19   basketball manufacturers or the National Football League or Major League Baseball

20   licenses others to use the NFL mark or MLB mark.  (Zelaya Decl. §_§ 10, 11.)

21         The sport of axe throwing is like darts in that both use a board and players take

22   turns seeing who can get the best score.   WATL has over 300 Member axe throwing

23   venues that pay dues to be a part of WATL.   Member axe throwing venues display

24   the WATL logo or the WATL trademark letters throughout their venue. Like a

25   bowling alley, the axe throwing venues supplement their income from renting out the

26   axe throwing lanes by serving food and beverages.  (Zelaya Decl. § 16.)

27         To help defray the costs of producing WATL events broadcast on ESPN, such

28   as the World Axe Throwing Championship, WATL sells advertising.   Exhibit 1

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

2

shows a sponsorship deck WATL created for the purpose of selling advertisements to its ESPN broadcasts of WATL events.  In addition to selling advertising to pay for the ESPN events, membership dues are used as well to offset the costs of broadcasting the WATL events, including championship events, on ESPN.  (Zelaya Decl. § 20, Exhibit 1).  WATL's main source of profits is selling axes. (Zelaya Decl. §§ 21, 22.)  Defendants trademark infringement has robbed Plaintiffs of profits from the sale of axes.

The sport of axe throwing is growing as a result of Plaintiffs' hard efforts and determination.  Plaintiffs have persevered and succeeded whereas the National Axe Throwing Federation has stalled in growth and as a result, rebranded to IATF. Contrary to defendants' statements, WATL's primary source of income is the sale of axes branded with the WATL logo.  The revenue from dues goes toward production fees for axe throwing broadcasts.     WATL funds the production (ie., the cameras, crews, announcers, etc) and gives the finished broadcast to ESPN to broadcast.  Since the sport is growing still, ESPN has all the leverage and doesn't pay cash for the broadcasts.  Instead, it allocates time slots for WATL to sell advertising.    Most recently, WATL's member Axe Throwing Venues advertise on the ESPN broadcasts in exchange for hosting the World Championship.  The money raised during these events is used to help fund the production costs.  (Zelaya Decl. §§ 18, 19.)

In December of 2018, Matt Bando from Cold Steel sent an email to WATL asking for permission to use the WATL logo.   He was politely told no.  Matt Bando asked again in January of 2019, and was again told no.  He was told if Cold Steel wanted to use the WATL mark Cold Steel would have to work out a deal with WATL.   (Zelaya Decl. §§ 13, 14, Exhibit 2.)  They never tried to work out a deal. Instead Cold Steel just used the mark without permission. (Zelaya Decl. § 15.)

WATL makes significant money by selling its axes. WATL and Cold Steel axes are the two dominant manufacturers of throwing axes.  Defendants unfairly compete with WATL by prominently advertising that their Cold Steel axes are

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

3

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

"WATL COMPLIANT" and/or "complies with WATL Regulations" and/or are "WATL APPROVED." Defendants also are selling the axes they advertise as WATL COMPLIANT at discounted prices that are 50-75% below WATL prices. (Zelaya Decl. § 22).

Defendants can afford to sell axes at such cheap prices because their main line of business is selling knives and other weapons. In 2018 Cold Steel expanded into making axes designed for axe throwing competitions, and in doing so, they purposely and willfully misrepresented to consumers and third-party resellers that Cold Steel's products were approved and associated with, endorsed by, or affiliated with WATL, which they are not. They sought to corner the axe throwing market at WATL's expense by undercutting WATL's pricing while presenting a false impression that Cold Steel's axes were endorsed by or associated with WATL.

As could be expected, Cold Steel's retail customers then copied and pasted the misrepresentations they found on the Cold Steel website and spread the misrepresentation further. Caldwell Deposition page 169, lines 5-25. As of January 20, 2022, there were at least twenty-seven of Cold Steel's retail customers that falsely represent the association between WATL and Cold Steel. (Zelaya Decl. §§ 25, 26).

Just like one who libels another and spreads vicious lies should not be able to refuse to accept responsibility for the republishing of the lies by others, Defendants here too should not be able to dodge responsibility for the republishing of their misrepresentations. ("[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer is contributorily responsible for any harm done as a result of the deceit [by the direct infringer]."). *Inwood Labs. Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 853-54 (1982). Defendants continue to sell its products to others when they know those retailers are simply republishing the false representations.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

Even after receiving complaints and warnings from WATL to stop the misrepresentation, Cold Steel continued to infringe and falsely advertise, and they did this intentionally so when defendant Lynn Thompson sold Cold Steel to GSM, he would personally get a multiple of those sales of infringed axes that could have been five to eight times the EBITDA obtained. (Zelaya Decl. §§ 5-7.)

Defendants' attempts to minimize the damage they caused and continue to cause is disingenuous.  If defendants were selling footballs or baseballs, would they dare advertise their footballs or baseballs as NFL Compliant or MLB Compliant without getting permission?  Of course not.  But since WATL is much smaller, they thought to give it a go, hoping the smaller entity would not protect its trademark.

Advertising obviously costs money.   Defendants were able to establish themselves as a major supplier in the axe throwing community by using the WATL mark as a false endorsement.   They never paid any fees to use the term WATL even though they were told in no uncertain terms that in order to use the WATL mark they would have to pay for it.  (Zelaya Decl. §§13, 14, 15, 42-43, Exhibit 2)

Defendants also claim they've done no harm because what they wrote is true. The claim that the accused axes are WATL Compliant implies to the ordinary reader that WATL inspected the axes and deemed them compliant.   This led purchasers of Defendants' axes to erroneously believe there was a connection between WATL and Cold Steel, when no such connection ever existed.   There is evidence of actual confusion in this case that Defendants' motion fails to address.  (See Section VI C infra at pp. 17-20.)  Also, Defendants' axes have a reputation for breaking.   They even issued a recall and offered replacement handles. (Zelaya Decl. §§ 34, 35; Machat Decl. § 4, Exhibit 9). WATL does not wish to be associated with defective axes.  Moreover, even though Defendants profess to have stopped infringing, their wrongful use of the WATL mark enabled them to obtain a mass marketing, first mover advantage in the axe the business of selling axes designed for throwing, depriving WATL of millions of dollars of profits. The extent of the damage caused

5

by Cold Steel was amplified by the fact that they utilized the WATL trademark across all possible marketing channels: YouTube (with over 1 million subscribers), Facebook & Instagram with hundreds of thousands of followers, email campaigns, their catalogue, the ColdSteel.com website, their Amazon listings, they utilized influencers in the sport to use our trademark, their own sales staff utilized the WATL trademark to sell products and they did this at a scale which has allowed them to obtain a first mover advantage in the sales of axes to axe throwing facilities and to consumers. Zelaya Decl. § 21.)

### III. Legal Standard for Summary Judgment in a Trademark Case with Nominative Fair Use as a Defense

A motion for summary judgment will be granted where the pleadings, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting

6

evidence. *See Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1042-43 (9th Cir. 2011) ("The credibility of witnesses is almost categorically a trial issue"). All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). *Elements Behavioral Health, Inc. v. Marcus,* 2017 U.S. Dist. LEXIS 217141, *3-5

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999); *see also Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002) (explaining that district courts may grant summary judgment only if there are no genuine issues of likelihood of confusion and that even then they should do so sparingly). *Bluetooth Sig, Inc. v. FCA United States LLC*, 463 F. Supp. 3d 1169, 1184 (WWDC 2020)

Whether a defendant "falsely suggested [it] was sponsored or endorsed by the trademark holder . . . speaks directly to the risk of [customer] confusion." *New Kids*, 971 F.2d at 308. Like the second prong, whether FCA's uses, in total, signal to customers that FCA is sponsored or endorsed by Bluetooth is for the trier of fact to decide. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005.) What evidence must be produced to overcome the presumption of a valid trademark "is generally viewed as an intensely factual issue. *Bluetooth Sig, Inc. v. FCA United States LLC*, 463 F. Supp. 3d 1169, 1186 citing *KP Permanent Make-Up*, 408 F.3d at 604.

Indeed, the Ninth Circuit has "cautioned against granting summary judgment" where the analysis turns on the likelihood of consumer confusion. *JL Beverage* Co., *LLC v. Jim Beam Brands* Ca, 828 F.3d 1098, 1105 (9th Cir. 2016). To

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

7

grant a motion to dismiss here would be inconsistent with the factual nature of the issue presented.  *Nirvana, LLC v. Mark Jacobs Int'l, LLC*, 2019 U.S. Dist. LEXIS 225708, *36-38

## IV.    Legal Standard for Trademark Infringement

"To establish a trademark infringement claim under either section [1114 (for registered marks) or 1125 (unregistered marks)] of the Lanham Act, a party "must prove: (1) that it has a protectible [sic] ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1124 (9th Cir. 2006); see also *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 630 (9th Cir. 2005); *Brookfield Commc'ns, Inc. v.W. Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999).[3]

To establish a protectable mark, a plaintiff must show that it owns the mark— and ownership is presumed when the mark is federally registered. *Sengoku Works Ltd. v. RMC Int'l, Ltd*., 96 F.3d 1217, 1219 (9th Cir. 1996) ("[T]he registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence"). "[T]he non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Id.* at 1220.

"'Use in commerce' means the bona fide use of a mark in the ordinary course of trade." *Rearden*, 683 F.3d at 1207–08 (finding bona fide use in commerce from a movie project, an Office License Agreement, an HD Editing Services Agreement, a directory identifying the plaintiff as an editing studio, a DVD cover crediting the

---

[3] "The same standard is embodied" in § 1125(a)(1) and § 1114, but § 1125(a)(1) applies to both registered and unregistered trademarks, while § 1114(1) applies only to federally registered marks. *Brookfield* , 174 F.3d at 1046 n.6.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

plaintiff with DVD design & editorial services, etc.). Use in commerce requires "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Brookfield Commc'ns*, 174 F.3d at 1052 (finding that the use of "'moviebuff.com' in e-mail correspondence with lawyers and customers" did not qualify as use in commerce).

Here, Plaintiffs' trademark registration (Exhibit 3 attached to Machat Decl., ¶ 2) afford it the presumption of ownership. *Sengoku Works*, 96 F.3d at 1219; *Applied Info. Scis. Corp. v. eBAY, Inc*., 511 F.3d 966, 970 (9th Cir. 2007).  But even if there were issues with the trademark registrations, no doubt from all the ESPN advertising and other use, of course Plaintiffs have used WATL in commerce and have a protectible interest -regardless of the registration status.

**V. Likelihood of Confusion in this Case is Evident.**

The test for likelihood of confusion turns on the eight *Sleekcraft* factors: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of sight, sound and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and (8) likelihood of expansion. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The factors are not rigidly weighed, but rather guide the court in assessing likelihood of confusion. *Id.*; *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (1992). "[T]he presence or absence of a particular factor does not necessarily drive the determination of confusion." *E. & J. Gallo Winery*, 967 F.2d at 1290. *Marketquest Grp. Inc. v. BIC Corp.,* 316 F. Supp. 3d 1234, 1269.

The parties in this case compete mostly online.  In *Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165, 1173 – 1174, (2007) the Ninth Circuit noted:

In the internet context, "the three most important *Sleekcraft* factors

in evaluating a likelihood of confusion are (1) the similarity of the

marks, (2) the relatedness of the goods and services, and (3) the

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

parties' simultaneous use of the Web as a marketing channel." *Interstellar Starship Servs*., 304 F.3d at 942 (citation and internal quotation marks omitted). "When this controlling troika or internet trinity suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Id.* (citations, alteration, and internal quotation marks omitted). "If the internet trinity does not clearly indicate a likelihood of consumer confusion, a district court can conclude the infringement analysis only by balancing all the *Sleekcraft* factors within the unique context of each case." *Id.*

Of course, in this case, since Defendants have used and continue to use the WATL mark, the marks are the same, the relatedness of the goods are the same, and the parties simultaneously use the web as a marketing channel.    Moreover, Defendants' selection of using the WATL mark was intentional and purposeful. They wanted to associate their Cold Steel axes with the WATL mark to sell more axes.   [Please see Exhibits 2 attached to Zelaya Decl. ¶ ¶  13 -15 and  Exhibit 24 attached to Machat Decl. ¶ 16]   Defendants seem to concede these points and trademark infringement in general, and their motion for summary judgment is based solely upon the nominative fair use defense.

## VI.   Defendants Fail to Satisfy Any of the Three Elements of the Nominative Fair Use.

Where the defendant uses the trademark not in its primary, descriptive sense, but rather in its secondary, trademark sense, the nominative fair use analysis applies. *See New Kids*, 971 F.2d at 308.  The three requirements of the nominative fair use defense are: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

sponsorship or endorsement by the trademark holder. *Brother Records, Inc. v. Jardine,* 318 F.3d 900, 907-908

The nominative fair use defense acknowledges that "it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark." *Id.* at 306. Still, the "core element" of trademark infringement law is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Thane Int'l*, 305 F.3d at 901(internal quotation marks omitted). *Therefore, the nominative fair use defense is available only if "the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one*." (emphasis added). *Brother Records* at 908 citing *New Kids*, 971 F.2d at 307-308.

Here, defendants use of the WATL mark did attempt to capitalize on consumer confusion and to appropriate the cachet of the WATL mark used on WATL axes for Cold Steel axes. Defendants' use of the WATL mark suggests sponsorship or endorsement by WATL. Defendants have refused to negotiate a license to use the WATL mark. Others pay to use the mark – i.e. the venues, and it's time that Cold Steel pays for what it took. The nominative fair use simply does not apply in this case. Defendants cannot satisfy the elements.

In *Brother Records*, the Court noted, "there is evidence that Jardine uses "The Beach Boys" trademark to suggest that his band is in fact sponsored by the Beach Boys, as Jardine's management testified that they recommended including the trademark "The Beach Boys" in the name of Jardine's band **in order to create or enhance marquee value**. Finally, Jardine's use of the trademark <u>**caused actual consumer confusion**</u>**, as both event organizers that booked Jardine's band and people who attended Jardine's shows submitted declarations expressing confusion about who was performing. Because Jardine's use of the trademark suggested sponsorship or endorsement by the trademark holder,**

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

**Jardine's nominative fair use argument fails**. *Brother Records, Inc. v. Jardine,*
318 F.3d 900, 908.   The same can be said here with respect to Cold Steel's unlawful
use of WATL.  It was done to enhance the perceived value of Cold Steel's axes and
it has caused actual confusion.

## A. Examples of Defendants' use of the WATL mark varied

In order to determine if Defendants' use of the mark was a nominative use, one
needs to of course examine the use of the mark.  Here, Defendants' use of the mark
varied.  Sometimes the use of the WATL mark was especially prominent and in other
instances it was contained within lines of text.  Defendants discuss the relatively
minor incidents of their use, while ignoring their blatant uses of the WATL mark.
However, each use needs to be analyzed because where one use may conceivably
meet all three elements of the nominative fair use defense, others may not.   Because
Defendants intentionally destroyed the evidence of their past uses of the WATL
mark, Plaintiff is left with only the remnants of what it was able to capture before
Defendants destroyed the evidence.   Accordingly, as discussed in Plaintiff's motion
requesting an adverse jury instruction [Dkt No. 40] an inference should be applied
here that Defendants' uses suggested sponsorship or endorsement.  Otherwise, if the
uses were innocent, why would Cold Steel not have preserved their website before
changing over to one compatible with GSM's accounting systems?

Here is a description of just some of the wrongful uses of the WATL mark that
Plaintiffs have been able to uncover.

Exhibit 4, an image dated January 4, 2019, captured by Mario Zelaya, (Zelaya
Decl. § 28, Exhibit 4)   illustrates defendants' decision to utilize the WATL mark
more prominently than their own mark.  One must almost strain one's eyes to read
Cold Steel.  Also, although the apparent name of the axe Competition Throwing
Hatchet takes up more space, because it has many more letters, the name of the axe
is in thin type and not prominent.   This use is in stark contrast to the use found in

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

Defendants' catalogue where the word WATL is not bold and is in the same font as descriptions of the product.    (Machat Decl. §3, Exhibit 5.)

In some instances, Defendant Cold Steel's advertisements using the WATL mark were absolutely false.  (Zelaya Decl. §§ 29, 30, Exhibit 6)       Consider for instance, Exhibit 6 – a copy of this image was attached to the Second Amended Complaint at page 6.   A similar image once appeared on the Coldsteel.com website before Defendant's removed all traces of it.    It shows a picture of an axe with two screws connecting the axe blade to the handle.  The advertisement says that the Cold Steel 90AXA Professional Throwing Axe is WATL Compliant.    That is false.  It is not compliant with the WATL rules.  The WATL rules do not permit interchangeable axe heads.  (Zelaya Decl. §§29, 30.)

Exhibit 7 presents another instance in which Defendants' ad falsely asserts one of their axes is WATL Compliant.   This document was captured by Defendants from the Wayback Machine and produced as CS001817.   The top left-hand corner has the date 11/23/21 indicating they accessed the website web.archive.org on 11/23/21 and input the ColdSteel.com website to see what would come up.   Since after the filing of this lawsuit Defendants destroyed all backup copies of how their website appeared previously, Defendants went to the WayBack Machine which only captures isolated instances of how a website appeared online on any given day.   The web image says the Axe Gang Hatchet Meets WATL regulations.    It does not.    The length of Defendants' Axe Gang Hatchet is too long for tournament play. (Zelaya Decl. §§ 31, 32.)  Defendants assert that as of June 25, 2019, the date pictured on the screen capture by the WayBack Machine, the length restrictions now applicable were not in effect and thus according to Defendants' interpretations of Plaintiff World Axe Throwing League's rules, it was compliant at that time.

However, there are problems with Defendants' assertions here.  First it should not be for a competitor to determine and proclaim that its products meet the regulations of its key competitor.  If the coin were flipped, how would Cold Steel

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

13

feel if WATL came out with a line of axes that it advertised was compliant with Cold Steel's standards for sharpness and durability?  Second, even if the Axe Gang Hatchet did meet WATL regulations on June 25, 2019, no one knows how long that product page for the Axe Gang Hatchet stayed online in that form.  The Wayback Machine did not capture this data, and whatever evidence that existed was intentionally destroyed by Defendants.  The question remains did Cold Steel remove the bold pronouncement "Meets WATL regulations" immediately after the rules changed?  Since Defendants destroyed the only evidence that would answer the question, this Court should presume that Defendants falsely advertised their Axe Gang Hatchet met WATL regulations after the length restrictions went into effect.

Exhibit 8 is a similar but different screenshot from the WayBack Machine scan of the coldsteel.com website on June 25, 2019.  This screenshot was captured by Mario Zelaya on September 23, 2020, and it reveals that there was a link to a video Defendant Cold Steel called, "Axe Gang Hatchet Handle Replacement."   (Zelaya Decl. § 33)

In this video, (Machat Decl. ¶ 4, Ex 9), Matt Bando and Cameron Caldwell appear to address the broken handle issue on Cold Steel's Axe Gang Thrower and Competition Thrower Axes.   They admit the wood handles on Defendants' lower priced axes broke.   They broke often, and Defendants issued a recall.   Defendant Cold Steel offered to replace the broken axe handles on both the Competition Thrower and the Axe Gang Model.   This video was authenticated by Cameron Caldwell in his deposition.   (Caldwell Depo at 54:16 – 55 attached to Machat Decl. ¶ 26.).  Defendants do not bother to even attempt to explain how it is fair for Cold Steel to have unilaterally associated the World Axe Throwing League's WATL mark with Cold Steel's defective axes.

Exhibit 10 presents an image taken from Cold Steel's retail partner Reliks.com website, that was provided during discovery by Defendants.   It replicates the ads placed by Cold Steel where it boldly proclaims the axe meets WATL Regulations.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

14

(Zelaya Decl. ¶ 36.)   Exhibit 11, also provided by Defendants during discovery, shows Cold Steel's retailer partner Oso Grande Knives offering Cold Steel's Competition Thrower on the first page (CS000198) and offering the Cold Steel Professional Throwing Hatchet on the second page (CS000199).   In both Exhibits 10 and 11, Defendants' retailers have simply copied and pasted the wording Cold Steel used in selling its products and put the same copy on their own website.  (Zelaya Decl. ¶ 36-38.)

Notably, the second page of Exhibit 11 shows Oso Grande Knives repeating the same lie of Defendants concerning the Cold Steel Professional Throwing Axe. As discussed above, the screw mechanism does not comply with Plaintiffs' rules and is forbidden.   There were more Cold Steel retailers that simply copied and pasted Cold Steel's infringing materials.   On September 23, 2020, Mario Zelaya wrote to Mr. Caldwell and informed him to take down the use of WATL on several of Cold Steel's retail partner websites.  (Zelaya Decl, ¶ 40, Ex. 12.). Of course, Mr. Caldwell realized what was happening was wrong and he attempted to comply.   Cold Steel's internal emails reveals he was able to get in touch with someone from Knife Center to remove the infringing text (Machat Decl. 5, Ex 13), but not so with all the retailers. (Plaintiff sued 26 of Cold Steel's retailers in January 2022, related case no. 2:22−cv−00424−JAK−E.)

## B. Defendants admit to trademark infringement and wrongful use of the WATL mark.

Prior to the September 23, 2020, warning letter from Mr. Zelaya (Exhibit 14), earlier that same year, on April 13, 2020, Mr. Caldwell alerted Ric Valdez, the executive Vice President of Cold Steel that Cold Steel were infringing Plaintiffs' WATL mark.  Specifically, he states in his admission,

It's very cut and dry. The axe throwing organization "*WATL*" has a *copyright or trademark on their name "WATL", therefore we cannot*

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

15

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

1    *use the word "WATL" on our product descriptions, social media,*

2    *anything. Just like if someone were to use "Cold Steel" on their*

3    *product and we could sue them. Using the name WATL to leverage*

4    *sales (by using the fact that our axe can be used in their organization -*

5    *as a selling point) is illegal and we've been warned in the past,* which I

6    remedied, but didn't realize that it was also in the Amazon description.

7    (Machat Decl, ¶ 6, Exhibit 15)

8        Defendants made other admissions that defeat their motion.  Besides

9    Cameron Caldwell's admission above, Cold Steel made a set of judicial admissions.

10   On December 1, 2021, Plaintiff sent a set of Requests For Admissions ("RFA") to

11   defendant Cold Steel, Inc.    There was no timely response, and on January 7, 2022,

12   defendants were reminded that they needed to file a motion to attempt to withdraw

13   any of the admissions. *(Machat Decl §§7-9, Ex.16).  Specifically Fed.R.Civ.P*

14   *36(a)(3) provides*:

15       A matter is admitted unless, within 30 days after being served, the

16       party to whom the request is directed serves on the requesting party a

17       written answer or objection addressed to the matter and signed by the

18       party or its attorney.

19   And Fed.R.Civ.P.36(b) provides

20       A matter admitted under this rule is conclusively established unless the

21       court, on motion, permits the admission to be withdrawn or amended.

22        Defendants did not file a motion requesting that its admissions be withdrawn.

23   So, for purposes of this opposition to Defendants' motion for summary judgment,[1]

24   defendant Cold Steel has admitted all of the following facts:

25   _____

26   [1] The text of Rule 36(b) is permissive.   A district court is not required to grant
     relief when the moving party brings a motion. *Am. Gen. & Accident Ins. Co. v.*

27   *Findley*, 2013 U.S. Dist. LEXIS 41644 *12 (CDCA 2013) citing *Conlon v. United*

28   *States* 474 F.3d 616, 624 (9th Cir. 2007.) The text of Rule 36(b) is permissive. *Id.*

16

- Cold Steel did not have approval from WATL to use the trademarks on any product.  RFA No.1.
- Cold Steel used the WATL trademarks for marketing purposes.  RFA No.3.
- Cold Steel offered customers free axe handles related to the products that used WATL trademarks.  RFA No. 4.
- WATL trademarks were continued to be used by Cold Steel after the complaint was filed.  RFA No. 5.
- Knowing that Plaintiff had threatened to sue Cold Steel, evidence and emails were destroyed.  RFA No. 7.
- Cold Steel customers utilized the same descriptions of the accused products as Cold Steel used on its website and/or were provided by Cold Steel. RFA No. 9.
- Cold Steel sponsored or gave free products to prominent axe throwers. RFA No. 11; and
- Cold Steel gave guidance to sponsored throwers to utilize the NATF or WATL trademarks in their social media posts.  RFA No. 12.

A copy of the Requests for Admissions propounded by Plaintiffs on Cold Steel is attached as Exhibit 17 to the Machat Decl. *§_7.*

### C. The testimonial evidence demonstrates Defendants purposely suggested sponsorship or endorsement by WATL, the trademark holder, in order to sell more Cold Steel axes.

The third element of the nominative fair use defense is "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.  *Brother Records, Inc. v. Jardine,* supra at 907-908.   The evidence overwhelming demonstrates the opposite in this case.  Yet Defendants do not even discuss the evidence of actual confusion and false endorsement presented during the deposition testimony of Benn MacDonald and

17

1  Jason Kearney both given on February 8, 2022.

2      Benn MacDonald was first to testify.  He owns Far Shot Recreation, an axe

3  throwing, knife throwing and archery business with five locations.  (MacDonald

4  Deposition 8:15-24; 11:8-11, attached to Machat Decl. *§ 10* as Exhibit 18.)  At each

5  location, his employees teach their guests how to throw axes as well as play games

6  and host those games.  (MacDonald Depo.11:22-12:1.).  The locations also offer

7  league play.  (*Id,* 12:16-17.)  Mr. MacDonald chose to affiliate his facilities with

8  WATL back in 2017 because "we thought it was great opportunity for us to join and

9  become something larger, really grow axe throwing into a sport it could become."

10  (*Id,* 15:15-20.) Mr. MacDonald testified he sees customers throwing both Cold Steel

11  and WATL axes.  (*Id*.,20:2-4).  He further testified that only the league members

12  throw the Cold Steel Competition Thrower because the handles are fragile and break

13  easily for first-time throwers, and that it has been an ongoing problem with the Cold

14  Steel Competition Thrower since it first came out. (*Id*.20:9-18.)

15      Like bowling alleys that loan bowling balls to the casual bowler, Far Shot loans

16  axes to first-time axe throwers while league members bring their own axes.  (*Id.*

17  27:10-14.)  Far Shot loans both WATL and Cold Steel axes to its customers and sells

18  them as well from its store. (*Id*.27:25-29:14.)

19      Most significantly, Mr. MacDonald testified that customers of his – league

20  members believed there was some type of formal relationship between WATL and

21  Cold Steel. (*Id*.,32:18-24.). "They believed that the Cold Steel Competition Throwers

22  (ie., the ones that break) were manufactured with WATL's assistance.  (*Id*, 33:2-5).

23  One of the league members told him, "He was excited that WATL was making axes

24  for league members to throw."  That was in 2019.  (*Id.,* 34:2-10.)  In fact, at that time,

25  Mr. MacDonald himself was confused.  "At the time, I thought that WATL was

26  working with Cold Steel to design new axes." (Id.34:24-35:8).  Another league

27  member thought likewise that there was an affiliation between Cold Steel and

28  WATL.  (*Id.,*35:17- 36:14.).  The two league members and Mr. MacDonald all

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

erroneously believed WATL and Cold Steel were somehow in business together. (*Id.* 38:18-21.) When asked "what caused him to believe that there was some kind of an association between WATL and Cold Steel, Mr. MacDonald testified, "We had read on the Cold Steel website that the Competition Thrower was WATL approved." They each came to this same erroneously conclusion independently and then again when they viewed the Cold Steel website together. (*Id.,* 40:5-41:4).

In the afternoon that same day, February 8, 2022, Jason Kearney sat for a deposition. (Excerpts from this deposition is attached to the Machat Decl. *§ 11* as Exhibit 19.) Mr. Kearney is the President of Got Wood Axe Throwing, LLC, a company that has six axe throwing facilities. (Kearney Deposition, 8:13-24 and 10:1-3). Like Mr. MacDonald, he too has seen many Cold Steel axes break. Unlike Mr. MacDonald, Mr. Kearney's facilities do not loan out any kind of WATL axes for throwing, because it is not cost effective. (*Id.* 23:19-24:10). Cold Steel axes cost much less than WATL axes. (Zelaya Decl. ¶ 22.)

Mr. Kearney testified that he had seen advertising and was led to believe that Cold Steel hatchet was complaint with WATL specifications. His beliefs came from a sales rep and Instagram. (*Id.* 29:21- 30:3.). He explained, the sales rep,

> 8   *He stopped by with the catalog and tried to get*
> 9   *us to be a Cold Steel wholesaler. And he showed me the*
> 10  *Axe Gang, said that it was the hot new thing in WATL,*
> 11   and everybody was throwing one, so much so that I bought
> 12  *one and actually used it in the 2018 world championship.*
> 13   *And that one, I mentioned earlier that I've had*
> 14  *since then with the original handle. I still have it.*
> 15  *I actually brought it to the 2019 championship as well.*
> 16  *And then Instagram via, you know, stories and posts on*
> 17  *Instagram.*
> 18   *Q   Do you know who created those Instagram posts*

19

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

> 19   *that you saw, whether it was Cold Steel or somebody*
> 20   *else?*
> 21      *A    It was Cold Steel.*
> 22      *Q    And how do you know that?*
> 23      *A    I screenshot it.* (*Id.*, 30:8-23)

When asked if anyone in particular said anything that suggested there was a direct business relationship between WATL and Cold Steel, Mr. Kearney responded:

> 9      *A    No, not so much.  There was a lot of inferring.*
> 10   *I think people assumed, but I don't know of anyone that*
> 11   *said that there was a direct relationship, business*
> 12   *relationship between Cold Steel and WATL.*
> 13         *All I know on that aspect is that that*
> 14   *particular salesman that visited me in the store*
> 15   *definitely made it appear as such, that this was going*
> 16   *to be basically the next big thing in WATL and what all*
> 17   *the top throwers are going to be throwing for the time*
> 18   *to come, and whatnot.*
> 19         *Like I said, that's, kind of, what influenced*
> 20   *my purchase on the first one that I ended taking two,*
> 21   *and then subsequently purchased a couple more after that*
> 22   *for personal axes, and then definitely recommended them*
> 23   *a lot to league members, and whatnot, for people that*
> 24   *want to get into axe throwing.*  (*Id.*, 33:5-24)

At a time when Cold Steel's owner, defendant Lynn Thompson was looking to sell his business, [Valdez Depo 11:5 – 12:1, attached to Machat Decl. ¶ 17], it was Cold Steel's company goal to become the preeminent player in the axe throwing community. Cold Steel wanted, "Ideally to become the pinnacle axe in throwing." (Machat Decl. ¶ Ex 24.)

As in the *Brother Records* case, Cold Steel used the WATL name in order to create or enhance the perceived value of the Cold Steel axes.  As in *Brother Records*, Cold Steel's use of the WATL mark suggested sponsorship or endorsement by the trademark holder, and Cold Steel's nominative fair use argument necessarily fails.

### D. Defendants' attempts at corrective measures conclusively demonstrate that it was never necessary for Defendant Cold Steel to have used the WATL mark in its advertising to identify the nature of their products sold.

To satisfy the first part of the test for nominative use, "the product or service in question must be one not readily identifiable without use of the trademark[.]" This situation arises "when a trademark also describes a person, a place or an attribute of a product" and there is no descriptive substitute for the trademark. *Playboy Enters. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002)

Yet Defendants have been able to continue to sell, advertise and market axes for throwing in competitions having ceased using the WATL mark.   Exhibits. 20, 21, and 22 (attached to the Machat Decl. ¶¶ 12 - 14)  show recent screen shots from the new coldsteel.com website, for the three Cold Steel axe products in question – the Competition Thrower, the Professional Thrower, and the Axe Gang.    The copy for the Cold Steel Competition Thrower Axe and its Axe Gang Hatchet says, "Meets most axe throwing association requirements for tournament play" which goes to show there was no need to use the WATL mark in the first place to sell the axes for use in tournament play[2].

Similarly, the new website copy for the Professional Thrower[3] no longer uses the WATL mark, again suggesting that there never was a need for Cold Steel to use

---

[2] The Axe Gang Hatchet does not meet WATL specifications for tournament play because the handle is too long. [Zelaya Decl. ¶31.]

[3] This axe also does not meet WATL regulations for tournament play, and the new product page on Cold Steel's new website does not even mention tournament play.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

the WATL mark.    "Meets most axe throwing association requirements" was an appropriate descriptive substitutive.   Thus, Defendants' use of the WATL mark fails to satisfy the first element of the nominative fair use defense.   They knew this all along.

Cold Steel did not use the WATL mark because there was no descriptive substitute.  Instead, Cold Steel used the WATL mark because, in its director of social media's words, "to leverage Cold Steel's sales."  (Exhibit 15 and Caldwell Depo 24:22-25.  Cold Steel was offered the opportunity to pay for sponsorship but decided to use the WATL mark without paying.  (Exhibit 2.)

## E. Defendants' attempts at corrective measures conclusively demonstrates that they used the WATL mark more than necessary to describe the Cold Steel axes.

The second element of the nominative fair use defense is the defendant must use only so much of the mark or marks may be used as is reasonably necessary to identify the product or service.  As discussed above, Defendants had no need to use any part of the WATL mark at all, and if it strongly felt a need to use it, it could have just used it in small print in a descriptive context as it currently does on its Amazon.ca website in Canada, where it is hard to find, in contrast to the other uses where WATL compliant is front and center. (Machat Decl. ¶ 15,  Exhibit 23. ) By emphasizing their axes were WATL compliant using bold type and large fonts, Defendants presented a false endorsement.   The nature and placement of the WATL was prominent and attention seeking.  Unfortunately, since, approximately one month after the filing of this case, Defendants intentionally destroyed all evidence of how the coldsteel.com website appeared, it is not possible to analyze each wrongful instance of defendants' placement of the WATL mark on its website.

## F. The nominative fair use defense is based upon the premise that the use(s) in question are truthful.  Here, in many instances they were false and misleading.

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

22

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

Both fairness and truthfulness were essential elements laying in the background of the 9th Circuit's seminal ruling in *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302 (9th Cir. 1992).   The news organization in that case had a First Amendment defense to trademark infringement. While the district court granted summary judgment below on First Amendment grounds, the *New Kids* court decided instead to articulate the nominal first use defense and affirm, noting the Court was free to affirm on any ground fairly presented by the record.  *Id* at 305.  In articulating the nominal fair use defense, the Court noted, "The New Kids [Plaintiffs] do not claim there was anything false or misleading about the newspapers' use of their mark." *Id* at 308.

In this case, both Cold Steel's Axe Gang Hatchet and its Professional Throwing Axe do not comply with Plaintiff World Axe Throwing League's regulations – despite its competitor, Cold Steel's claim to the contrary.   Those are false claims and accordingly the nominative fair use should not even be available to them.

Judge Kozinsky wrote, "The law has protected trademarks since the early seventeenth century, and the primary focus of trademark law has been misappropriation - the problem of one producer's placing his rival's mark on his own goods."  The wrong protected was, "Preventing producers from free-riding on their rivals' marks. Justice Story outlined the classic scenario a century and a half ago when he described a case of "unmitigated and designed infringement of the rights of the plaintiffs, for the purpose of defrauding the public and taking from the plaintiffs the fair earnings of their skill, labor and enterprise." *Taylor,* 23 F. Cas. at 744. The core protection of the Lanham Act remains faithful to this conception."  *New Kids on the Block supra at* 305.

In this case *sub judice*, there was nothing noble in defendants' actions.   They sought to become the pinnacle company in axe throwing at a time when defendant Lynn Thompson was looking to sell Cold Steel to defendant GSM knowing that the

greater Cold Steel's sales were prior to the sale of the company, the more Lynn Thompson would profit.  Traditionally those that sell a profitable company like Cold Steel make a multiple of at least five to ten times that amount in the sale.  Defendants have admitted they did not need to use the WATL mark to let the public know their axes were suitable for throwing in league competitions[4].   Defendant Cold Steel and Defendant Lynn Thompson's infringement is nothing but a case of "unmitigated and designed infringement" of plaintiffs for the purpose of taking from Plaintiff the fair earnings of its skill, labor and enterprise so that upon the sale of Cold Steel to GSM, Lynn Thompson would benefit by a multiple of the additional revenues derived from taking Plaintiffs' WATL mark for his own benefit.

### VII.   Defendants' spoliation of evidence warrants an inference they destroyed evidence that is inconsistent with nominative fair use, and thus another reason to deny summary judgment.

As discussed, the nominative fair use defense implicitly demands that each use of the mark by defendants be analyzed and considered.  Some uses could conceivable be a nominative use while some are not a nominative use.   We will never know for sure how defendants used the WATL mark on its website in conjunction with the Cold Steel axes, because defendants deleted all files of their website including the back-ups.   Presumably they did so knowing the evidence was harmful to them.  Consequently, a negative inference should be applied that the destroyed evidence would have conclusively established their use of the WATL mark did not satisfy the elements of the nominative fair use defense.   (Please see Plaintiff's pending motion for a negative inference instruction.  Dkt. Nos.  40-42.)

---

[4] Also, the vast majority of axes sold are to casual axe throwers who do not participate in league throwing competitions and thus without a need to know if an axe were WATL compliant. (Zelaya Decl. ¶¶ 42-43; Kearney depo.11:10 -12:12 and 12:25 – 13:10, MacDonald Depo 14:11 – 15:11).

MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-18

## VIII. Conclusion.

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion for summary judgment be denied, and if the Court is so inclined, this Court should instead grant summary judgment in Plaintiffs' favor as to defendants' trademark infringement.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated:  April 19, 2022                    By: /s/ Michael Machat

Michael Machat (CA SBN 109475)
Machat & Associates, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, CA 90069
Tel: (310) 860-1833
Email: Michael@machatlaw.com
Attorneys for Plaintiffs
World Axe Throwing League, Inc. and
Lincoln Chicago Holdings, Inc.