UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson-Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) ORDER RE MOTION FOR SUMMARY JUDGMENT (DKT. 38)**

I.   **Introduction**

World Axe Throwing League, Inc. ("WATL") and Lincoln Chicago Holdings, Inc. (collectively "Plaintiffs") brought this action against Cold Steel, Inc. ("Cold Steel"), Lynn Thompson ("Thompson"), and Good Sportsman Marketing LLC ("GSM") (collectively "Defendants"). The Second Amended Complaint ("SAC"), which is the operative one, was filed on May 18, 2021. Dkt. 24. The SAC advances the following causes of action: (i) unfair competition in violation of 15 U.S.C. § 1125(a); (ii) trademark infringement in violation of 15 U.S.C. § 1114; (iii) false advertising in violation of 15 U.S.C. § 1125(a); (iv) contributory trademark infringement; (v) unfair competition and false advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* and common law; and (vi) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.* and common law.

On March 29, 2022, Defendants filed a Motion for Summary Judgment. Dkt. 38 (the "Motion"). On April 19, 2022, Plaintiffs filed an opposition. Dkt. 47 (the "Opposition"). On May 3, 2022, Defendants filed a reply. Dkt. 52 (the "Reply"). Defendants also filed evidentiary objections to the Opposition. Dkt. 53-1 (the "Evidentiary Objections").

A hearing on the Motion was held on October 31, 2022. For the reasons stated in this Order, the Motion is **DENIED**.

II.   **Factual Background**

   A.   The Parties

The SAC alleges that WATL is a Delaware corporation whose principal business office is located in Ontario, Canada. Dkt. 24 ¶ 3. The SAC alleges that Plaintiff Lincoln Chicago Holdings, Inc is a Delaware corporation, and holds the WATL trademark that it has licensed to WATL. *Id.* ¶ 4.

The SAC alleges that Cold Steel is a California corporation, which is based in Ventura, California, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

that it does business in California. *Id.* ¶ 5. The SAC alleges that Thompson is a resident of Ventura County, California and is the founder and CEO of Cold Steel. *Id.* ¶ 6. The SAC alleges that GSM is a limited liability company that presently owns Cold Steel. *Id.* ¶ 7.

      B.      Allegations in the Second Amended Complaint

The SAC alleges that WATL is the preeminent governing body and league for the sport of axe throwing. *Id.* ¶ 9. It is alleged that WATL has used the trademark "WATL" to market and publicize the axe throwing league. *Id.* ¶¶ 12, 13.

It is alleged that, without the approval of WATL, Cold Steel "marketed, advertised and sold substantial sums of axes which were clearly labeled 'WATL Compliant' or 'Meets WATL regulations.'" *Id.* ¶ 16. The SAC next alleges that Cold Steel's false marketing of products as "WATL approved" without submitting its products to WATL for inspection poses a risk of harm to consumers who may acquire and use them. *Id.* ¶¶ 32, 33. The SAC alleges that Cold Steel continued to use the WATL trademark, despite being told several times that it does not have permission to do so. *Id.* ¶ 34. The SAC alleges that Thompson continued to infringe on the trademark in an effort to increase the value of Cold Steel before selling Cold Steel to GSM. *Id.* ¶ 38. The SAC also alleges that Thompson and Cold Steel "failed to preserve essential documents" and "deleted or otherwise destroyed essential documents." *Id.* ¶ 41.

**III.**      **Evidentiary Objections**

Defendants filed 39 objections to the evidence filed by Plaintiffs in support of their Opposition. The following evidentiary objections are sustained: 28, 29. The following evidentiary objections are overruled: 2, 3, 32, 34, 35.

The remaining objections are deferred until trial. Some of these objections are improper because they are duplicative of arguments made in the briefing of the Motion. *See McCarthy v. R.J. Reynolds Tobacco Co.*, No. CIV2092495WBSDAD, 2011 WL 13405571, at *1 (E.D. Cal. Mar. 31, 2011) ("Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."). Other objections concern exhibits that could be presented in an admissible form at trial. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence*.") (emphasis added). Moreover, at the summary judgment stage, the Ninth Circuit is often more lenient with evidence proffered by the non-moving party. *See Burch*, 433 F. Supp. 2d at 1121 (summarizing cases).

Some objections concern evidence that was not considered in connection with this Order. These objections center on declarations or deposition testimony in which the declarant or witness may have relied on hearsay, or lacked foundation, to state that other retailers copied Cold Steel's infringement or that consumers were confused by the use of the WATL mark. There is some undisputed evidence, including email communications between the parties, that can be interpreted to show that websites, including the one operated by Amazon, used the WATL mark when promoting the products of Cold Steel. There is also undisputed evidence of use of the WATL mark by Cold Steel. In light of such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

undisputed evidence, it is not necessary to consider the admissibility of the remaining disputed evidence.

**IV.     Analysis**

      A.     Legal Standards

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is sufficient evidence that a reasonable fact finder could find for the nonmoving party. *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984 (N.D. Cal. 2019). A fact is "material" if it could change the outcome of the case. *Id.* The Court must read the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Where the moving party will bear the ultimate burden of proof at trial, the moving party "must prove each element essential of the claims upon which it seeks judgment by undisputed facts" in order to succeed. *eOnline Global, Inc.*, 387 F. Supp. 3d at 984 (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513 (N.D. Cal. 1995)). This showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *t'Bear v. Forman*, 359 F. Supp. 3d 882, 905 (N.D. Cal. 2019) (quoting *First Pac. Networks, Inc.*, 891 F. Supp. at 513). Only then must the nonmoving party "present significant probative evidence tending to support its claim or defense" to defeat the motion. *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

If the moving party will not bear the ultimate burden of persuasion at trial, then the moving party must carry both the burden of production and the burden of persuasion on its motion for summary judgment. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). To carry the burden of production, the moving party "must either produce evidence negating an essential element of the nonmoving party's claim ... or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–03. To successfully carry the burden of persuasion, the moving party must show the court that no genuine dispute of material fact exists. *Id.* at 1102. "If the moving party does not carry its initial burden of production, then the nonmoving party need not produce any evidence to defeat the motion. But, if the moving party does carry the burden of production, then the nonmoving party must identify with reasonable particularity enough evidence supporting its claim or defense to create a genuine dispute of material fact to defeat the motion." *eOnline Global*, 387 F. Supp. 3d at 984 (citations omitted) (citing *Nissan Fire*, 210 F.3d at 1102–03). Otherwise, the moving party will win on its motion. *Nissan Fire*, 210 F.3d at 1103.

In both types of motions, the evidence presented by the nonmoving party must be enough for a jury to return a verdict for the nonmoving party. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "If the nonmoving party's 'evidence is merely colorable or is not significantly probative,' then summary judgment may be granted." *eOnline Global*, 387 F. Supp. 3d at 984.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

The Ninth Circuit has "cautioned against granting summary judgment" where the analysis turns on the likelihood of consumer confusion. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016).

    B.    Application

        1.    <u>Nominative Fair Use</u>

Defendants argue summary judgment should be entered in their favor on counts one (unfair competition), two (trademark infringement) and three (false advertising) because each claim is barred by the nominative fair use doctrine. Defendants argue for summary judgment on counts five and six (the state law claims) because they are derivative of the Lanham Act claims.

        a)    Legal Standards

Under the federal Lanham Act, the central inquiry with respect to a claim of trademark infringement or false designation is whether there is a "likelihood of confusion" between the mark and the allegedly infringing material. *New West Corp. v. NYM Co. of Cal., Inc.* 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation, the test is identical -- is there a 'likelihood of confusion?'"). However, "fair use" provides an affirmative defense to those who allegedly infringed trademarks. 15 U.S.C. §§ 1115(b)(4), 1125(c)(3)(A). There are two types of fair use: "nominative" and "classical." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010).

Nominative fair use applies when a defendant uses a trademark in referring to the plaintiff's products. *Id.*; *see also 1800 Get Thin, LLC v. Hiltzik*, No. 11-00505, 2011 WL 3206486, at *2 (C.D. Cal. July 25, 2011) ("Where a defendant uses a trademark to describe plaintiff's product rather than its own product, that defendant is entitled to the nominative fair use defense."). The nominative fair use doctrine permits a "truthful use of a mark, even if the speaker fails to expressly disavow association with the trademark holder, so long as it's unlikely to cause confusion as to sponsorship or endorsement." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F. 3d 1171, 1177 (9th Cir. 2010) (citations omitted). Nominative fair use is appropriate in the "class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block v. News America Publishing, Inc.*, 971 F.3d 302, 308 (9th Cir. 1992). "Such nominative use of a mark—where the only word reasonably available to describe a particular thing is pressed into service— lies outside the strictures of trademark law: Because it does not implicate the source identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder." *Id.* "The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product*." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).

In general, a plaintiff must establish that a defendant's use of the mark is likely to confuse consumers, by applying the eight-factor analysis in *Sleekcraft*. *See Fortune Dynamic*, 618 F.3d at 1030; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). However, if a nominative fair use defense is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20−cv−11407 JAK (Ex) | | Date | February 14, 2023 |
|---|---|---|---|---|
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | | |

raised, the fair-use analysis replaces the likelihood-of-consumer confusion analysis in *Sleekcraft. See Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

To establish a nominative fair use defense, a defendant must prove the following: (1) "the product or service in question must be one not readily identifiable without use of the trademark"; (2) "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service"; and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308. A plaintiff need only rebut successfully one of these elements to defeat a defendant's reliance on the nominative fair defense. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004) (because defendant's use of plaintiff's mark was inconsistent with the first prong for nominative use, analysis of the two other tests was unnecessary); *see also Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1041 (9th Cir. 2007) (defendant's use must meet all three fair use prongs).

Further, "[a]s a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis." *Grupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004). Indeed, California law enumerates a fair use defense that parallels the language of 15 U.S.C. § 1125(c)(3)(A). Cal. Bus. & Prof. Code § 14247(b)(1).

      b)      Application

             i.      Burden of Proof

The party claiming infringement bears the burden of establishing that an alleged infringer's use of the trademark is "*not* nominative fair use." *Toyota*, 610 F.3d at 1182. A finding of nominative fair use is a finding that the plaintiff has failed to show a likelihood of confusion as to sponsorship or endorsement. *See Welles*, 279 F.3d at 801; *New Kids*, 971 F.2d at 308 ("Because [nominative fair use] does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition."). The Lanham Act always places the "burden of proving likelihood of confusion . . . on the party charging infringement." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004); *see also id.* at 120–21; *Nissan Fire*, 210 F.3d at 1102.

Defendants, as the moving party, must satisfy the burden of production in one of two ways. *First*, by producing evidence that would defeat an essential element of Plaintiffs' claim that Defendants' use of the mark was not fair use. *Second*, in the alternative, by showing that the Plaintiffs have not presented evidence of an essential element to carry their ultimate burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1102–03. Because nominative fair use does not apply unless all three elements are satisfied, Defendants must show that Plaintiffs cannot defeat any of the three elements. If the burden of production is met, Plaintiffs must identify with reasonable particularity evidence that is sufficient to create a genuine dispute of material fact. To carry the burden of persuasion, Defendants must show that there is no genuine dispute of material fact. *See id.* at 1102.

             ii.      Truthfulness of Defendants' Statements

As a preliminary matter, nominative fair use permits only the "truthful use of a mark." *Toyota*, 610 F.3d at 1177. Defendants contend that the "Cold Steel Competition Thrower, Model 90AXF . . . meet[s]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

WATL Regulations" and that the "Cold Steel Axe Gang hatchet, Model 90AXG, meets WATL Regulations with a slight modification that is commonly made." Dkt. 38 at 11-12. Plaintiffs contend that certain Cold Steel axes advertised as meeting WATL regulations did not, in fact, comply with them. Therefore, Plaintiffs argue that the nominative fair use defense does not support the Motion. *See New Kids*, 971 F.2d at 307 ("competitors may use a rival's trademark in advertising and other channels of communication if the use is not false or misleading").

In support of this argument, Plaintiffs proffer an advertisement of the Cold Steel 90AXA Professional Throwing Hatchet depicting an axe with interchangeable axe heads -- a feature that Plaintiffs argue is prohibited by the WATL rules. Dkt. 47 at 22; Zelaya Decl. ¶ 29, Ex. 6. Defendants respond that Plaintiffs have not offered evidence that Cold Steel itself advertised the Professional Throwing Hatchett as meeting WATL regulations; instead, other retailers made this claim when advertising the axe. Dkt. 52 at 9. However, Mario Zelaya declares that a similar advertisement appeared on Cold Steel's website. Zelaya Decl. ¶ 30. Cameron Caldwell also testified that a common practice in e-commerce is for retailers to copy the descriptions of products from the websites of manufacturers. Machat Decl. ¶ 18, Ex. 26 (Caldwell Depo.) at 169: 7-25. In light of this testimony and Defendants' failure to preserve the historic versions of the website, the jury could infer that the Cold Steel website did state that the Professional Throwing Hatchet was WATL compliant. Defendants also contend that even if Cold Steel did make such a claim, the WATL regulations do not prohibit removeable axe heads. Dkt. 52 at 9. However, that fact is disputed.

Plaintiffs also proffer an advertisement of the Axe Gang Hatchet from June 25, 2019, which was produced by Defendants from a November 23, 2021 search of the Cold Steel website using the Wayback Machine. Zelaya Decl. § 31, Ex. 7. Although Plaintiffs appear to concede that the axe was WATL compliant in June 2019, they contend that the axe violates the present length restrictions of WATL. Dkt. 47 at 22. Plaintiffs argue that, because the Defendants failed to maintain copies of the historical versions of the website, it is appropriate to presume that Defendants continued falsely to advertise their Axe Gang Hatchet as meeting WATL regulations after the length restrictions went into effect. *Id.* at 22-23. Defendants argue that such a presumption is not warranted, and that the uncontradicted evidence shows the Axe Gang Hatchet was widely used in WATL tournaments in 2018 and 2019. Dkt. 52 at 8-9; Dickinson Decl. ¶ 8, Ex. 10.

In light of Defendants' failure to preserve copies of the historical versions of the website, a reasonable juror could infer that Defendants continued to advertise the Axe Gang Hatchet as compliant with WATL regulations after the length restriction was adopted. Such an inference would not be unreasonable in light of Defendants' continued advertisement of the Axe Gang Hatchet as "[m]eet[ing] most axe throwing association requirements for tournament play." Dkt. 47 at 30. Similar language was substituted for previous references to WATL in advertisements for the Competition Throwing Hatchet. Dkt. 38 at 17-18.

For these reasons, there is a genuine dispute of material fact as to whether all of the axes that Cold Steel advertised as meeting WATL regulations did so at the time of these advertisements. This would be sufficient to deny summary judgment as to nominative fair use as to certain of the axes. However, because Plaintiffs do not contend that the Competition Throwing Axe was or is noncompliant, it is necessary to assess whether the three requirements of nominative fair use are met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

                iii.      Whether WATL's Products or Services Are Readily Identifiable Without Use of the WATL Trademark

Defendants contend that they used the WATL mark to refer to Plaintiffs' services, i.e, WATL's regulations for length, weight and other physical features of throwing axes required for use in the WATL competition. Dkt. 38 at 17. Defendants argue that due to the presence of two other similar organizations -- the International Axe Throwing Federation (IATF) and the International Knife Throwing Hall of Fame (IKTHOF) -- the only way to inform consumers that Cold Steel products met the WATL regulations was to refer to WATL. Dkt. 52 at 11-12. Defendants argue that WATL regulations would not be readily identifiable with a more generic statement, such as "a popular axe throwing league." *Id.* at 17. Plaintiffs contend that the Defendants' current advertisement, which states: "Meets most axe throwing association requirements for tournament play," is an appropriate descriptive substitute. Dkt. 47 at 30-31.

Using a trademark is appropriate where it is "the most straightforward, obvious and truthful way to describe" the service or product associated with that mark. *Toyota*, 610 F.3d at 1177. That a descriptive substitute exists is insufficient. For example, "one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls." *New Kids*, 971 F.2d at 306. Similarly, the availability of descriptive substitutes such as "most axe throwing association requirements" or "a popular axe throwing league" is insufficient to defeat the nominative fair use defense. Defendants have met their burden of showing that WATL is not readily identifiable without using the WATL trademark.

                iv.      Whether Only So Much of the WATL Trademark Was Used as Reasonably Necessary to Identify WATL

Defendants argue that Cold Steel did not use any distinctive features of the trademark, such as the logo or stylized lettering, and did not prominently display the WATL mark in any way. Dkt. 38 at 18-19. Plaintiffs respond that Cold Steel's use of the mark varied, i.e., the WATL mark was displayed more prominently than the Cold Steel mark in some instances. Dkt. 47 at 21-22.

In evaluating this factor, courts examine whether the distinctive fonts or symbols associated with trademarks are used. *Compare Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019) (citing *New Kids*, 971 F.2d at 308 n.7) ("a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke but would not be entitled to use Coca-Cola's distinctive lettering"); *Welles,* 279 F.3d at 802 ("Welles' banner advertisements and headlines satisfy this element because they use only the trademarked words, not the font or symbols associated with the trademarks."); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d, 350, 352 (9th Cir. 1969) (defendant "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem"); *with Toyota*, 610 F.3d at 1181 ("the use of the stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota" as defendants "could adequately communicate their message without using the visual trappings of the Lexus brand"); *Sierra Int'l Mach. v. Axel*, No. 1:21-CV-00723, 2022 WL 658016, at *5 (E.D. Cal. Mar. 4, 2022) ("the availability of the generic SIERRA word mark suggests that . . . Defendant did not need the stylized version to readily identify Plaintiff's products"). Courts have rejected the argument that displaying another's trademark in larger font than one's own trademark constitutes unreasonable use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

*CMRE Fin. Servs. Inc. v. Doxo Inc.*, No. 222CV00298RAJBAT, 2022 WL 16701259, at *6–7 (W.D. Wash. Oct. 7, 2022), *report and recommendation adopted*, No. 222CV00298RAJBAT, 2022 WL 16699090 (W.D. Wash. Nov. 3, 2022) (rejecting argument that the defendant went beyond reasonable use by displaying plaintiffs' names in a larger font than the defendant used for its own name, where plaintiffs did not allege that the defendant improperly used their front, stylization or logo); *see also Welles*, 279 F.3d at 802 (trademarked words in "banner advertisements and headlines" satisfied the second *New Kids* factor); *Brother Recs., Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003) ("BRI does not allege that Jardine uses any distinctive logo 'or anything else that isn't needed' to identify the Beach Boys, and Jardine therefore satisfies the second requirement.").

Plaintiffs argue that the use of the bold font and large size of the mark was unreasonable. However, they have not proffered evidence that Defendants used any distinctive fonts, logos or symbols associated with the mark. Therefore, Defendants have met their burden of showing that only so much of the WATL trademark was used as was reasonably necessary.

          v.      Whether Defendants Did Anything that Would, in Conjunction with the WATL Mark, Suggest Sponsorship or Endorsement by WATL

Plaintiffs argue that "defendants['] use of the WATL mark . . . attempt[ed] to capitalize on consumer confusion and to appropriate the cachet of the WATL mark used on WATL axes for Cold Steel axes." Dkt. 47 at 20. In support of this position, Plaintiffs present several advertisements that use the WATL mark in conjunction with the words "compliant," "legal," and "meets . . . regulations." *See* Zelaya Decl., Ex. 4 ("#NATF and #WATL legal!"); *Id.*, Ex. 6 ("NATF and WATL Compliant"); Machat Decl., Ex. 5, Zelaya Decl., Ex. 11 ("Meets NATF & WATL Tournament Regulations"); Zelaya Decl., Ex. 10 ("Meets NATL and WATL Regulations"); Machat Decl., Ex. 7, Zelaya Decl. Ex. 8 ("Meets NATF, WATL and IKTHOF regulations"). Defendants argue that a reasonable consumer would not view these statements as suggesting sponsorship or endorsement by WATL specifically, in light of the references to other leagues. Defendants also argue these statements merely claim that the axes are compatible with use in WATL tournaments, not that WATL has approved them.

Plaintiffs present evidence that consumers viewed these statements as suggesting sponsorship or endorsement by WATL. Plaintiffs offer testimony from Benn MacDonald, who owns an axe-throwing business that provides both Cold Steel and WATL axes to customers. Machat Decl. ¶ 10, Ex. 18 (MacDonald Depo.). MacDonald testified that, in 2019, he and two other league members believed that WATL worked with Cold Steel to manufacture axes, based on advertisements on Cold Steel's website. MacDonald Depo. at 32-40. Defendants argue this testimony is speculative and point out that MacDonald states he "had read on the Cold Steel website that the Competition Thrower was WATL approved," notwithstanding that no evidence has been offered that Cold Steel ever used the phrase "WATL approved." *Id.* at 40: 11-12. Although it is not clear whether the phrase "WATL approved" appeared on Cold Steel's website, MacDonald's testimony demonstrates that axe purchasers could reasonably and mistakenly believe that the Competition Thrower was either approved by or made with WATL, and that this belief arose due to the use of the WATL mark on Cold Steel's website.

Plaintiffs also offer testimony from Jason Kearney, who also owns an axe-throwing business. Machat Decl. ¶ 11, Ex. 19 (Kearney Depo.). He testified that he and others believed that there was some form of a relationship between Cold Steel and WATL. Kearney Depo. at 31: 14-17. Defendants respond that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

Kearney acknowledged this belief stemmed from assumptions and inferences, and that Kearney did not know of anyone who said there was a direct business relationship between Cold Steel and WATL. *Id.* at 33: 5-24. However, Kearney's testimony supports the view that Defendants' use of the WATL mark on social media and through a sales representative, contributed to confusion about the relationship between WATL and Cold Steel within the community of competitive axe throwers. *See Healthvana, Inc. v. Telebrands Corp.*, No. CV2004305DDPSKX, 2022 WL 562265, at *4 (C.D. Cal. Feb. 23, 2022) (distinguishing "inattentive or careless" consumers from those that are "actually confused").

Defendants also argue that the beliefs of these "insiders" are not probative of those of an ordinary consumer. Dkt. 52 at 14. However, Defendants acknowledge that they used the WATL mark to target consumers who sought to compete in WATL tournaments. In addressing the third nominative fair use factor, a court's "focus must be on the reasonably prudent consumer in the marketplace." *Toyota*, 610 F.3d at 1176; s*ee also Brother Recs.*, 318 F.3d at 908 ("Jardine's use of the trademark caused actual consumer confusion, as both event organizers that booked Jardine's band and people who attended Jardine's shows submitted declarations expressing confusion about who was performing."). Defendants offer no evidence that Kearney, MacDonald or the league players they referenced were not reasonably prudent consumers in the marketplace of competitive throwing axes.

Further, internal Cold Steel communications support the inference that Cold Steel intended to use the WATL trademark to increase sales. Caldwell stated that WATL had directed Cold Steel to stop "[u]sing the name WATL to leverage sales (by using the fact that our axe can be used in their organization – as a selling point)," a situation he said he had "remedied." Machat Decl. ¶ 6, Ex. 15. The Ninth Circuit has held that statements by a manager of a band that recommended the use of a trademark to "create or enhance marquee value," was evidence that the band used the trademark to suggest sponsorship. *Brother Recs.*, 318 F.3d at 908. Kearney's testimony confirms that Defendants' use of the WATL mark may be construed as contributing to the impression that Cold Steel's Competition Thrower would be "the next big thing in WATL," causing throwers such as Kearney to purchase it. Kearney Depo. At 33: 16.

Defendants have not shown that they have "do[ne] nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308. Therefore, the Motion is **DENIED** as to counts one, two, three, five and six.

   2.  Contributory Infringement

Defendants argue that the Motion should be granted as to contributory trademark infringement because Defendants' use of the WATL mark did not induce any other person to infringe on the mark. Defendants contend that Plaintiffs cannot show that Defendants intentionally induced any retailers or distributors to infringe on the mark or that Defendants continued to supply axes to retailers or distributors knowing that they were using the axes to engage in trademark infringement.

   a)  Legal Standards

Contributory trademark infringement "is a judicially created doctrine 'that derives from the common law of torts.'" 4 McCarthy on Trademarks and Unfair Competition § 25:17 (4th ed.). A manufacturer or distributor can be held liable for the infringing acts of another if it "intentionally induces another to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20−cv−11407 JAK (Ex) | Date | February 14, 2023 |
| Title | World Axe Throwing League, Inc. et al. v. Cold Steel Inc. et al. | | |

infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 853 (1982). To state a claim for contributory trademark infringement, a plaintiff must allege that a defendant "(1) intentionally induce[d] another to infringe on a trademark or (2) continue[d] to supply a product knowing that the recipient [wa]s using the product to engage in trademark infringement." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.1996) (citing *Inwood*, 456 U.S. at 854–55); see *also Louis Vuitton Malletier v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011); *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007).

        b)      Application

There is a genuine dispute of material fact as to whether Defendants intentionally caused any other person to infringe on the WATL mark or continued to supply axes to any person while knowing that the person was using the axe to engage in trademark infringement. Caldwell testified that it was common practice for retailers, including Amazon, to copy and paste product descriptions from the website of the manufacturer. Caldwell Depo. at 169: 7-25. In an email from April 2020, Caldwell confirmed that Amazon's allegedly infringing use of the WATL mark "was pulled from the [Cold Steel] website prior to [Defendants' and Plaintiffs'] contacts regarding removing it from there." Zelaya Decl. ¶ 41, Ex. 14. In September 2020, Plaintiffs provided another list of retailers and distributors who continued to use the "same and consistent description" including the WATL mark. Zelaya Decl. ¶ 40, Ex. 12. Plaintiffs have also proffered evidence that third parties continue to use the WATL mark in advertising Cold Steel products. *See* Zelaya Decl. ¶¶ 25, 26 (stating that, as of January 20, 2022, at least 27 of Cold Steel's retail customers still falsely represent the association between WATL and Cold Steel).

This evidence is sufficient to show a genuine issue of fact as to whether Defendants could have reasonably anticipated that retailers or distributors would copy allegedly infringing language from the Cold Steel website. It is also sufficient to show a genuine issue of fact as to whether Defendants continued to supply axes to third parties who referred to the WATL mark even after Defendants removed the WATL mark from their website. Whether Defendants intentionally caused others to infringe or knew third parties continued to advertise their axes using the WATL mark are also triable issues of fact.

Consequently, the Motion is **DENIED** as to the claim for contributory infringement.

**V.**    <u>**Conclusion**</u>

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

|  |  : |
|---|---|
| Initials of Preparer | tj |